IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

### EASTERN DISTRICT—PHILADELPHIA 1867.

## Gloninger *et al. versus* The Franklin Coal Co. *et al.*

1. A grant to Fell, "his heirs, executors, administrators and assigns for ever (of) the free right to dig coal at the coal-bed under my lot—with the privilege freely to carry the coal from the said lot, as also free egress and regress to and from said coal-bed through my land at all times hereafter, doing as little damage as may be in the uses aforesaid," conveyed an incorporeal hereditament.

2. The grant is not of an exclusive right, it is a privilege to dig coal at a specified bed and carry it away, not interfering with the owner's right to mine *ad libitum.*

June 25th 1866. At Wilkesbarre, before Woodward, C. J., Thompson, Strong, Read and Agnew, JJ.

Error to the Court of Common Pleas of *Luzerne county.*

This was an action of ejectment, commenced June 11th 1863, by C. D. Gloninger and others against Peter Keihron and others for a lot of land in Wilkesbarre township, Luzerne county, containing about 106 acres. At the trial, February 24th 1865, The Franklin Coal Company was added as landlord and co-defendant.

Andrew Wickizer, being the owner of the land in controversy, on the 1st day of January 1808, for the " consideration of $6.50 paid by Edward Fell, of the borough of Wilkesbarre, blacksmith," by deed-poll did " grant, sell and convey to the said Edward Fell, his heirs, executors, administrators and assigns for ever, the free right to dig coal at the coal-bed under the foot of the mountain on my lot No. 22, in third division of lands in Wilkesbarre, with the privilege freely to carry the coal from the said lot, as also free egress and regress to and from said coal-bed through my

[Gloninger *v.* Franklin Coal Co.]

land at all-times hereafter, doing as little damage as may be, in the uses aforesaid."

On the 6th of May 1813, Fell, by assignment endorsed on his deed, conveyed "all his right, title and interest" in the premises to Thomas Brown for the consideration of $30.

On the 12th of July 1819, Brown conveyed to Jacob Hassinger and others "the free, unmolested and exclusive privilege of digging stone-coal so far as the same extends on said lot No. 22, together with all the privileges that are secured, or meant to be secured to the said Thomas Brown, his heirs and assigns, by the above recited instruments of writing, and also all the estate, right, title, interest, property, claim or demand whatever, of the said Thomas Brown," &c. To have and to hold the above mentioned and described coal-bed exclusively, with all the privileges thereunto belonging, unto the said grantees, as tenants in common, &c.,—"their heirs and assigns for ever."

By subsequent conveyances eleven undivided twelfths of the interest which passed by Wickizer's deed to Fell, were vested in The Franklin Coal Company, one of the defendants; the remaining one-twelfth belongs to the plaintiffs.

Several veins of coal underlie "lot No. 22;" an opening had been made into the "Baltimore vein" near the foot of the mountain and the outcrop of the coal. The lot extends much further up the mountain. The Baltimore vein is supposed to extend under the entire lot and is the principal vein in the Wyoming Valley. There are some smaller veins under and over it, but none had been worked on this lot in 1808.

After the jury was sworn, the foregoing facts were agreed to by the parties and submitted to the court as a case stated.

On the 21st of December 1865, the Court of Common Pleas entered judgment for the defendants, Conyngham, P. J., delivering the following opinion:—

"The plaintiffs claim a right to recover an interest in the coal upon lot No. 22, 3d Division of Wilkesbarre township: of the coal right, of which the original plaintiffs, as the heirs of Eliza Hassinger, represent one forty-eighth part, it being agreed that J. W. Gloninger shall be added as a co-plaintiff, so that all together these represent one-twelfth part. This is claimed to be either all the coal upon the said lot, north-east of the coal-bed at the foot of the mountain, hereafter referred to, or if not all the coal, which is admitted to consist of several distinct and divided veins, at least of the coal upon said lot, in the so-called Baltimore vein, in the outcrop of which at the foot of the mountain the old coal-bed was opened in 1808.

"Andrew Wickizer in 1808 was the owner of this tract of land, both surface and underlying coal, and on the 1st of January of that year conveyed by deed, duly executed and recorded, to

Edward Fell, of the borough of Wilkesbarre, blacksmith, his heirs, executors, administrators and assigns for ever, in consideration of the sum of $6.50, 'the free right to dig coal at the coal-bed at the foot of the mountain, on my lot No. 22, &c., with the privilege freely to carry the coal from the said lot, as also for egress and regress to and from said coal-bed through my land at all times hereafter, doing as little damage as may be in the necessary uses aforesaid.' By various proceedings and conveyances the plaintiffs claim that an undivided interest as above stated, of that which became vested in Edward Fell under said deed, is now vested in them.

"The main question in the cause depends upon the construction of the above recited deed. If by it a corporeal hereditament was granted to Edward Fell, the plaintiffs have established a right to a portion of it. We are certainly disposed to sustain the ruling of our Supreme Court in Caldwell v. Fulton, 7 Casey 475, re-affirmed in Clement v. Youngman, 14 Wright 344, that a grant of an unlimited right, title and privilege to dig and take away the coal on a tract of land to any extent the grantees may think proper and for a consideration presently paid, is a grant of the coal itself, and not merely of a license or incorporeal right. It is a decision too important to this section of country, where there are so many instances of one person owning the surface and another the underlying coal, for us to desire to disturb it.

"The rule too is well settled that the nature and the quantity of the interest actually conveyed by a deed, must be discovered from the deed itself, the subject about which the parties are contracting, and the circumstances and object for which it was made. If this deed was intended to convey to Edward Fell the right to dig and carry away the coal to the exclusion of any right in Wickizer to take any portion of the coal from the tract or from the vein upon the whole tract into which that coal-bed was opened, then it would properly convey a corporeal hereditament, and would fall within the ruling of Caldwell and Fulton; if it was intended to be but of an undefined part of the coal, Wickizer still retaining a right to dig and take coal there, as he might desire, as the owner of the lot, then it will be found to be an incorporeal hereditament and not recoverable in this action of ejectment. From the case of Clement v. Youngman, we learn also, that though the deed may in form seem to convey or actually convey the exclusive right and privilege of searching, digging and carrying away all iron-ore, limestone, &c., still, from other provisions in the deed itself, and circumstances thereby shown to be connected with the transaction, the reasonable intention of the parties may be differently inferred, so as to control the broad and unlimited words in the conveying clauses.

"To understand the present deed aright, and thus get at the

[Gloninger *v.* Franklin Coal Co.]

true intent of the parties, we think we may revert to the well-known state of our country at the time, and the information we have as to the uses and purposes of stone-coal then; there are some words in the deed that lead us to this thought.   Tradition and history tell us that on the 1st day of January 1808, there was but little knowledge of great coal-veins and coal-tracts of land, the coal forming the great item of value in such real estate, as is now the case.   Coal was then regarded as only capable of being used for ordinary manufacturing purposes by blacksmiths and others, the almost universal opinion being that it could not be used as a fuel, from the want of a bellows or strong artificial draft to make it burn; it was not until February 11th 1808, that old Judge Fell, the officer before whom this deed was acknowledged, succeeded in firing coal, so as to prove that it would burn in a grate.   There were at that time no large coal-mines in operation; small quantities of coal as were needed by the neighboring blacksmiths, were quarried out by the blacksmith and his man at some coal-bed, as they were then called, and sometimes by a man employed by the owner, when it was necessary.   There were then but few open coal-beds in this vicinity; it is believed the Hollenback bed at Mill Creek, the Butler and Bowman bed (now the great Baltimore Company mines), and then, perhaps, this Wickizer coal-bed, made in the outcrop of the vein, were the places from which the blacksmiths in this vicinity obtained their coal; the price of coal for such purposes being mainly the labor of digging it and then the hauling, with a small compensation to the owner. In this deed the consideration is in fact but nominal, though perhaps as Edward Fell was a blacksmith, and is so called in the deed, it may have been a real consideration, allowed in the settlement of some blacksmithing bill with Wickizer, thus purchasing a right to go and procure his coal himself—coal for his purposes, when he needed it; it is difficult to conceive that these parties really supposed that the one was selling and the other buying the exclusive right to take all the coal upon the tract or even in the one great vein.   From the deed itself it is certainly more natural to suppose, that being made to a blacksmith, both parties believing that coal was of no use except for the purposes of his shop, that it was intended to give a right to go there and take away coal as the fire of his shop required it.   It is certainly also more natural to construe such a deed according to the evident understanding of the parties, as applicable to the subject of their contract, the supply of the purchaser's forge, for a small consideration, rather than the transfer of the large body of coal claimed now under either view of the plaintiff's demand.   The grant of an open coal-bed is like the grant of property with an open mine; there the lessee can dig only in the open mines, and cannot sink new pits: 12 Petersdorff's Ab., tit. *Mines.*

[Gloninger v. Franklin Coal Co.]

" The conveyed right is not to search and dig for coal in any place upon the tract, but ' to dig coal *at* the coal-bed under the foot of the mountain,' &c., not conveying the coal in the coal-bed, &c., or the coal-bed, but simply to dig coal *at* the coal-bed, &c. Wickizer had an open coal-bed there—did he convey to Fell anything more than to come there, dig at the bed, to which point free ' egress and regress,' as it is expressed in the deed, is given to him ? Are we called upon to say that when the plain farmer Wickizer, for a trifling consideration, gave to the blacksmith Fell the right to dig coal at his coal-bed, that he intended to deprive himself of all right to do the same—that those parties understood that if a more convenient blacksmith be found nearer to the mine; that he could not give to him the privilege to go and dig coal at the same bed, which he had opened no doubt at his own expense, and which many blacksmiths might find opportunity to dig at, upon occasional times, without interfering with the earlier claimant of a digging right—or that a year or two later, when the experiment of Judge Fell, upon his grate made of hickory saplings, had become known, and the value of coal as a fuel partially ascertained, that Wickizer, or his grantees, had no right to visit his own coal-bed, and get some coal for his own new grate, or even if he could find upon his lot in the rolling of his land another outcrop, that he could make no new opening, because he had parted with his coal right to Fell ? The right is not directly limited by words, but neither is it conveyed in the broad terms of the deed in Caldwell *v.* Fulton. We cannot find in this deed expressions justifying such plain and natural queries, as those put by Mr. Justice Woodward in his opinion, 7 Casey 478. There is no language here showing that the grantor clearly intended to part with all the coal upon the tract, or even all the coal in the one vein, in which the bed was originally made. We have no evidence that it is practicable to work out all the coal upon the tract, or all of the Baltimore vein, from the one old coal-bed at the foot of the mountain: we know that in every tract there are faults, breaks of continuity in veins from the rising of the land, in what are termed rolls, so that in the extent or length of the tract north-east from the old coal-bed, there is no probability that from the opening at the outcrop, the coal even of the one large vein can now be worked. Does all this coal, without regard to such questions, belong to Fell and his heirs or assigns, because he obtained a right to dig coal at the old coal-bed, an entrance now, perhaps, entirely useless for the purpose of following the coal at this time ? Have the claimants under Fell, in consideration of the trifling sum paid by them, the right to claim places for engine-houses and appurtenances, breakers and refuse dirt, necessary, as we all know now, to mine and prepare coal for market, near the old opening, or on any other part of the tract ? How shall we

enter judgment for the plaintiff here ?—for the old coal-bed at the foot of the mountain ? This would be too indefinite and uncertain. For all the coal in the tract, or all in the Baltimore vein ? What evidence have we, as we have said, that the vein of coal is not so broken, that it would be impracticable to procure but comparatively small quantities of the coal from the old coal-bed at the foot of the mountain ? The claim of plaintiffs would seem to be too indefinite to be regarded as a corporeal hereditament, capable of being delivered in an ejectment. We are at a loss to define the extent of the right, as to say how much coal they may have the right to dig, but in this there is no real difficulty affecting the right. Did not the deed to Fell convey an interest similar to a common in gross, *without stint* or *sans nombre ?* there may be such a grant to a man and his heirs: 2 Bl. Com. 34; 3 Id. 239. We can give no other reading to so indefinite a grant of a simple right to dig out at a specific opened coal-bed, than that it was a right to be used not exclusive, but in common with the owner of the land. This is a conclusion consistent with the deed itself: the addition of the trade or business of the grantee has more meaning than simply as *descriptio personœ,* connecting it with the subject-matter of the arrangement as both parties, with the knowledge they then had upon the subject, must have intended.

"We are of opinion, too, that upon more general principles, the case falls within the reason of the case cited by Mr. Justice Strong in 4 Wright 344—the quotation from Lord Coke, and the cases of Lord Mountjoy and Cheatham *v.* Williamson. Lord Mountjoy's right was ' to take sufficient ore, &c., to make alum and copperas,' Is not the implication as strong in this case, that the blacksmith was to take coal for his work, that is, for blacksmithing purposes ? Is not this intent as clear as the implied intent to erect iron-works in the case of Clement *v.* Youngman ? The payment of the small consideration of a few dollars at the making of the contract cannot make a very marked difference in the cases. The language of the reservation in Cheatham *v.* Williamson was much more comprehensive, covering a right to dig and search for minerals over the whole tract; here the right to dig was at only one place, one coal-bed, where, from all that appears here, there may be now many coal-beds upon the same tract.

"Upon the consideration of the whole case as submitted to us, while we desire to adhere strongly to the true principles, decided in Caldwell *v.* Fulton, we construe this deed as giving to Fell and his assigns no exclusive right to the coal, and, therefore, in him and the plaintiffs who claim under him, if they have any right at all, only an incorporeal hereditament, which will not sustain this ejectment. Judgment is entered for the defendants."

The plaintiffs removed the case to the Supreme Court.

*S. Woodward*, for plaintiffs in error.—The deed from Wickizer to Fell is a grant of a corporeal hereditament. It is a grant of coal, and coal is land. Barney *v.* Sutton, 2 Watts 32, is not in accordance with later authorities: Caldwell *v.* Fulton, 7 Casey 476. Wickizer's deed was a conveyance of the coal: Morris *v.* Phaler, 1 Watts 390. That Fell was described as a blacksmith is nothing, as affecting words of limitation in a deed. Clement *v.* Youngman, 4 Wright 346, is not analogous to this case, which is like Caldwell *v.* Fulton, *supra*.

*A. T. McClintock*, for defendants in error.—In Caldwell *v.* Fulton the grant gave " the full right, &c., to dig and take away coal to any extent the grantee might think proper under any of the lands of the grantor." This shows an unlimited grant and designates the quantity of land to which the right extends; it therefore gives a right to all the coal under those lands. In the present case the grantee has only the right to take from the " bed under the foot of the mountain." The grant is not exclusive of the grantor, but in common with him. It is to dig an open coal-bed ; the grantee could not sink new pits. It is a mere incorporeal hereditament: 2 Black. Com. 20 ; Chetham *v.* Williamson, 4 East 469 ; Johnstown Iron Co. *v.* Cambria Iron Co., 8 Casey 241 ; Clement *v.* Youngman, 4 Wright 341 ; Lord Mountjoy's Case, 4 Leon. 147 ; Co. Litt. 164, b.

The opinion of the court was delivered, May 20th 1867, by

READ, J.—This case depends upon the construction to be placed upon a deed-poll, executed by Andrew Wickizer on the 1st January 1808, granting, in consideration of $6.50, unto Edward Fell, blacksmith, his heirs, executors, administrators and assigns for ever, " the free right to dig coal at the coal-bed under the foot of the mountain on my lot No. 22 in 3d division of lands in Wilkesbarre, with the privilege freely to carry the coal to and from said coal-bed through my lands at all times hereafter, doing as little damage as may be in the uses aforesaid."

The grantor was the owner of the whole tract and a resident of the township of Wilkesbarre, in which the land was situated, and the grantee was a blacksmith in the borough of Wilkesbarre.

This language does not bring the case within that of Caldwell *v.* Fulton, 7 Casey 478. Caldwell reserved no interest in himself. He sold for a valuable consideration all he had in the sixteen acres and *all the coal in his other land—I say all*, because the grant is limited to no time, or quantity, or purpose, or person. Can a reservation to the grantor be implied in the face of terms so large ? What room was left for the grantor ? Might he mine also ? Assuredly not against the consent of his alienee, for he had sold all the coal that alienee might think proper to take or

[Gloninger *v.* Franklin Coal Co.]

cause to be taken, " an exclusive right to all the coal to be taken without limitation, except as to the point of ingress and egress, is a sale of the coal itself; and there is nothing incorporeal about coal. It is included in the definition of land, and those hereditaments only are incorporeal which are not land." Per Woodward, J., Id. 478, 479.

The present case is not an exclusive right in the grantee to dig all the coal, and to any extent, and to exclude the grantor from mining also; and is, therefore, not ruled by Caldwell *v.* Fulton. It is more like the case of The Johnstown Iron Co. *v.* The Cambria Iron Co., 8 Casey 241. " It was not a sale of all the iron-ore, notwithstanding the stipulation that the privilege was to be given to none else, because it was to be paid for by the ton, and, of course, no more was sold than should be raised." " The language of Lord Ellenborough in Chetham *v.* Williamson, 4 East 476, is, that no case can be named where one who has only a liberty of digging for coals in another's soil has an exclusive right to the coals, so as to enable him to maintain trover against the owner of the estate for coals raised by him." Per Woodward, J., Id. 247.

Such a right is not exclusive in the grantee, but to be enjoyed in common with the grantor, his heirs and assigns, and the grant is, therefore, an incorporeal hereditament. The right in the case before us is not exclusive in form, words or spirit, and is simply a privilege to dig coal at a specified coal-bed and carry away the coals so taken, and not interfering in any way with the right of the owner of the land to mine *ad libitum*.

It is, therefore, only an incorporeal hereditament, as has been fully explained by the learned judge in the court below.

Judgment affirmed.