# George Lulay et al., Appellants, v. Thomas Barnes.

[Marked to be reported.]

*Deed—Location of land—Parol evidence—Ejectment.*

Parol evidence is admissible to explain an ambiguity in a deed as to the location of the land intended to be conveyed.

*Vendor and vendee—Deed—Description—Location of land—Parol evidence—Question for jury.*

In an action of ejectment it appeared that R. was the owner of two adjoining tracts of land, one containing 128 acres, and the other containing 136 acres. By articles of agreement he sold to L. the tract of 128 acres, describing its boundaries by the names of the adjoining owners. Immediately after this description the agreement continued as follows: "The coal right in the northern hill, as far as to the centre, between the southern and northern boundary, vests in the purchaser, and he has the right to dig the coal as his property, and to make a road to the coal bank over the shortest and most passable route. R. has likewise the right of access to the coal over the shortest and most passable route that will cause the least damage, on the southern side, and if necessary to prospect for coal, and to open a coal mine on the said purchaser's, L.'s property, but he is not allowed to take out coal over the middle." The evidence of the scrivener who wrote the articles was in effect that the "northern hill" was in the northern half of the 136 acres tract, and that by instructions of both parties he was directed to write the agreement so as to include the coal under the northern half of the 136 acres tract. *Held*, that the agreement was not so vague and uncertain that it could not be interpreted, and that the question of the location of the coal was for the jury on all the evidence.

*Vendor and vendee—Articles of agreement—Recording articles—Notice.*

Where a purchaser of coal from an equitable owner by articles of agreement places the articles on record, the fact that the vendor subsequently takes a deed from the legal owner will not affect the rights of the vendee under the articles, and any one claiming under the deed will be affected with notice of all that the articles contain.

*Deed—Separation of minerals from surface—Adverse possession.*

An owner of land who conveys the coal under his land to another cannot reacquire title to the coal by possession of the surface continued for any length of time. Such possession is neither hostile, visible, notorious, nor continuous, and is no possession of the coal at all.

A purchaser of land under articles of agreement is not bound to take actual possession of it, in order to preserve his title.

*Vendor and vendee—Deed—Resulting trust—Act of April 22, 1856.*

Where a purchaser of coal under articles of agreement pays the whole amount of the purchase money, and places the articles on record, no resulting trust arises to which the act of April 22, 1856, P. L. 532, applies.

*Vendor and vendee—Deed —Equitable title—Estoppel.*

An equitable owner of two tracts of land by articles of agreement sold one tract in fee simple and the coal under a portion of the other tract. The articles constituted a present sale of the coal completed by the execution of the agreement, and required no further conveyance to perfect it. The purchaser recorded the articles, and subsequently the vendor procured the legal owner to make a deed to the purchaser of the tract sold in fee simple, and also took a deed to himself from the legal owner of the other tract without any reference being made in the deed of the sale of the coal. *Held,* (1) that the agreement was not merged in the deed of the tract under which the coal had been sold, and that the vendee's right to the coal was not thereby forfeited; (2) that the vendee by the acceptance of the deed for the land which he had bought outright, did not estop the vendee from claiming the coal under the other tract.

Argued Oct. 15, 1895. Appeal, No. 74, October T., 1895, by plaintiffs, from judgment of C. P. Cambria County, March Term, 1893, No. 198, on verdict for defendant. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Ejectment to recover coal underlying a piece of land in Susquehanna township. Before LONGENECKER, P. J.

Anthony Reiger was the equitable owner of 264 acres of land of which he sold to Adam Lulay 128 acres with a right to mine coal on the other part of the tract, as per the following agreement:

" Articles of agreement for the sale of 128 acres of land and all the buildings thereon between the vendor, Anthony Reiger of Susquehanna township, Cambria Co., Pa., and the purchaser, Adam Lulay, of Brady's Bend, Armstrong Co., Pa., for the purchase money of $2,500.00 upon the following conditions:

1. The first payment must be made by the 1st of August, 1871, in the sum of $1,000.00.

2. The second payment of above purchase money must be made by the 1st of April, 1872, in the sum of $500.00.

3. The third payment must be made by the 1st of April, 1874, in the sum of $1,000.00, of which sum $750.00 must bear interest from date at 6 per cent. for Leonard Hiller.

4. The one hundred and twenty-eight acres are bounded on the west by Anton Reiger; on the N. by Peter Garman; S. by John Schneider, John McDonnell; E. by Wm. Luth and Peter Garman. Upon this land are the following buildings: dwelling house, saw mill and part of a barn newly erected.

5. The coal right in the northern hill, as far as to the centre, between the southern and northern boundary, vests in the purchaser, and he has the right to dig the coal as his property, and to make a road to the coal bank over the shortest and most passable route.

6. Anton Reiger has likewise the right of access to the coal over the shortest and most passable route that will cause the least damage, on the southern side, and if necessary to prospect for coal, and to open a coal mine on the said purchaser's, Adam Lulay's, property, but he is not allowed to take out coal over the middle.

7. Anton Reiger has the right to open a road for hauling along the southern side of the barn to the Township road, not over thirty feet wide from his house, over the shortest and most suitable route.

8. Of all grain which has been sowed on the share, the pur chaser, Adam Lulay, has the right to claim one-third as his property.

This agreement is made this 10th day of June, 1871, and signed in witness thereof by the vendor,.

Witness:                                  ANTON REIGER,
JACOB SCHIRF.                          *and the purchaser,*
                                        ADAM LULAY."

Receipt for twenty-five dollars which the undersigned received as part of the first payment from Adam Lulay this 10 day of June, 1871.

                                        ANTON REIGER."

JACOB WHITE, Justice of the Peace of said County."

Lulay recorded the articles on April 3, 1872.    Anthony Reiger was the equitable owner only of the two tracts of land, and subsequently by deed dated March 29, 1873, William and Daniel Bergstresser the legal owners made a deed to Adam Lulay of the one hundred and twenty-eight acres tract, and on the same day made a deed to Anthony Reiger of the one hundred and thirty-six acres tract.    In the latter deed no mention was made of the sale of the coal underlying the tract sold to Lulay.

The following plan shows the situation of the two tracts of land :

Scale: 1 inch = 40 perches.

The parol evidence relating to the situation of the land is quoted in the opinion of the Supreme Court.

The court charged in part as follows :

We have concluded that it is our duty to determine this case on the law. Questions of law have arisen upon the full development of the case which are controlling in their character and require us to dispose of it without submitting to you the consideration of the facts. The undisputed facts are sufficient to make an end of the case when the law is applied.

[The plaintiffs claim to recover under the fifth clause of the agreement, made June 10, 1871, which was written in German and translated in your hearing. It was not artistically drawn, and the clause referred to is vague and uncertain, so that the witnesses differ both as to the precise land contemplated thereby

and the right sought to be conferred or intended to be conveyed. We deem it too uncertain in the light of the testimony relating thereto to submit it to you as a basis for a recovery in this action. After all the evidence of the experts who translated it for us, its true meaning is still involved in uncertainty and it is a debatable question what Lulay's rights thereunder were.] [1] It is in evidence that when it was made the nearest railroad was over twenty miles away, and it is, at least, an open question in the light of all the circumstances then existing, whether it was meant to sell the coal in place under the hill referred to, or to confer merely the privilege of digging and removing a sufficient quantity for domestic consumption, instead of removing all the available coal thereunder and conveying it to market. It appears that at the time when Reiger and Lulay made this agreement no deed had yet been made to the former for the premises which that paper was designed to divide between the two. It seems that Reiger had acquired the equitable title thereto, while the legal title still remained in the Bergstressers, who thereafter, on the 29th of March, 1873, conveyed to them respectively the several purparts. In doing so no notice whatever was taken or mention made of the interest of Lulay in the coal existing in the "northern hill," on Reiger's purpart referred to in the clause already mentioned. Why it was omitted from both deeds does not appear —whether it was by inadvertence or otherwise. The agreement was a preliminary or executory contract which the parties intended should be followed by a conveyance for the land mentioned therein. As it recites, it was an agreement for the sale of one hundred and twenty-eight acres of land, etc. There is no averment or evidence of any fraud, accident, or mistake, in the execution and delivery of the deeds thereafter made to put the title in them respectively, [nor was any step taken by Lulay in all the succeeding years during which the title to the one hundred and twenty-eight acres was in him to reform the deed or assert his right, if he had any, to the coal under Reiger's land. The contract to convey having been thus consummated, the previous understanding or agreement between the parties was merged in the deeds.] [12]

The plaintiffs have shown that prior to the conveyances to Lulay and Reiger, at least two payments had been made by

Lulay to Reiger on account of the price mentioned in the agreement. These payments having been made previous to the inception of the legal title in Reiger for the one hundred and thirty-seven acres in fee, to say the best for him, there arose an implied or resulting trust, under which Reiger held for him the title to the coal in place under the " northern hill " as claimed by the plaintiffs. Our act of assembly provides that " no right of entry shall accrue, or action be maintained to enforce any implied or resulting trust as to realty, but within five years after such equity or trust accrued with the right of entry, unless such trust shall have been acknowledged by writing, to subsist by the party to be charged therewith, within the same period." That is to say, within the same period that an action can be maintained, viz: within five years. It is not pretended that any entry was had or action brought to assert Lulay's rights. On the contrary, Reiger continued in the sole, exclusive and undisturbed possession of the premises under the title conveyed to him without the slightest assertion of claim on the part of Lulay, so far as the evidence shows, for a period of seventeen years and over. It cannot be said that the original agreement is tantamount to the acknowledgment in writing mentioned and intended by the act, because the trust did not then " subsist ; " neither can it be claimed that the writing anticipated the creation of a trust, because it had no such exigency in contemplation. There being then an implied or resulting trust, if Lulay obtained any interest in the coal, it follows that it was not relieved of the operation of the act of assembly, and the action to assert and enforce it now is barred by the limitation of the statute. In addition to what we have thus said, we will read and answer the points submitted by the counsel for the respective parties.

Plaintiffs' points were as follows:

1. That an action of ejectment will lie for a coal interest and the action is properly brought. *Answer :* We affirm this point.

2. That if the defendant, or vendor, Anthony Reiger, had only an equitable title at the time he made the agreement with Adam Lulay, or had no title at all, and afterwards acquired a title in fee simple, the title inured to the benefit of Adam Lulay.

This is affirmed as applying to the coal interest but not of course to the fee simple as indicated by the reading of the point.

3. That the placing of the articles of agreement for the sale of the coal right and of the one hundred and twenty-eight acre tract upon record, and it having been properly indexed in the books required by law, it was constructive notice to the world of his rights under that agreement, of which rights the defendant in this case was bound to take notice. *Answer:* We say in answer to this point that it is true to the extent of any rights which Lulay had when placed on record. The effect of recording the paper was to give constructive notice, as stated in the point, but when it was followed within a few years by a deed vesting the complete title to the premises in Reiger who continued for some seventeen years in the exclusive and undisturbed possession before selling to the defendant, the latter was not bound by such notice. [3]

4. That the agreement being in part for the sale of the coal right underlying the land in dispute, there being no evidence of any opening; the placing on record of the agreement and taking actual possession of the one hundred and twenty-eight acres, which were also conveyed by the agreement, was all the possession Adam Lulay could take under the law, and for the purposes of this suit he would be considered in actual possession of the land or coal right so far as he was capable of taking it under the agreement and the only possession required by law. *Answer:* We refuse this point. [4]

5. That the coal underlying the land, the vendee could not gain a residence or settlement upon it. The law will not require impossibilities, and in placing the agreement upon the record and the payment of the purchase money in full, was such a possession as would take it out of the terms of the act of the 22d of April, 1856. *Answer:* This point is not very clearly expressed, and, as stated, we refuse it. [5]

6. That the act of the 22d of April, 1856, does not apply to this case; that there was a substantial performance of the contract by the payment of the full amount of the purchase money; by the conveyance of the one hundred and twenty-eight acres by deed; by the actual possession of the one hundred and twenty-eight acres, and such possession of the coal right as the same was capable of in pursuance of the agreement in evidence; that there was such a possession of the land and coal right in dispute as was capable of being taken and all that would be required

in law. *Answer:* We refuse to instruct you as requested in this point. [6]

8. That the payment of the purchase money by the vendee and the acceptance of it by the vendor, the placing of the agreement upon record and the taking of such possession as the subject-matter was capable of, was in law a consummation of the contract and gave the vendee a right to the coal in dispute. *Answer:* This point is refused for reasons we have already stated. [7]

9. That the recital in the deed from Anthony Reiger to Thomas Barnes is evidence to show that the defendant knew of the existence of the contract, and it is evidence of the fact that Anthony Reiger knew and admitted the contract or article of agreement to be in force, and that the defendant in accepting that deed was bound by that notice, and that the agreement was in force; that Anthony Reiger, or the defendant claiming under him, cannot claim certain rights and privileges under the agreement placed on record which would inure to their benefit and repudiate the residue of the agreement, for if he takes a part he must take the whole, and if he takes a part we can enforce the whole so far as it has not been complied with. *Answer:* This point is refused so far as it relates to the question of notice. It is affirmed so far as the latter portion is concerned, which relates to the defendant claiming under the agreement any rights which are not mentioned in the deed of conveyance from Bergstressers, because we have already said the original agreement was merged in the deeds. [8]

10. That the defendant or his vendor, Anthony Reiger, claiming rights under the agreement made with Adam Lulay, and recited in the deed from Reiger to the defendant, is an acknowledgment that the agreement was in force at the time in so far that it had not been complied with. *Answer:* This point is refused. It is not such acknowledgment as would take the case out of the operation of the statute already referred to. [9]

11. That there was nothing in the agreement requiring Adam Lulay to take out the coal or open a mine within a specified time and he could not be prejudiced by not doing so. *Answer:* We answer that there was nothing requiring him to take out the coal within a specified time, but after the entire title to the premises vested by Bergstresser's deed in Reiger, he was bound

to assert his title or claim under the agreement and could not postpone it indefinitely. [10]

12. That the conveyance from William and Edwin Bergstresser to Adam Lulay for one hundred and twenty-eight acres of land was only a partial performance of the agreement, and the doctrine of merger does not apply.  *Answer :* We answer, for the reasons already stated, that the doctrine of merger does, we think, apply in this case. [11]

13. That the verdict should be for the plaintiffs.  *Answer :* We refuse this point. [14]

Defendant's points were as follows :

1. That the contract in writing is so vague and uncertain in its terms that a chancellor could not enforce it and therefore the verdict must be for the defendant.  *Answer :* Upon a careful examination of the fifth clause of the agreement we conclude that it is too indefinite and vague, both as to the particular ground intended to be embraced and the extent of the estate or privileges therein, to warrant a recovery, and this point is therefore affirmed. [2]

4. That the deeds from William and Edwin Bergstresser to Adam Lulay and Anthony Reiger, respectively, dated the 29th day of March, 1873, having been made subsequently to the contract dated June 12, 1871, and accepted by them, there would be a merger of the contract in the deeds, and such being the case the verdict should be for the defendant.  *Answer :* As already stated in reply to plaintiffs' 12th point and in our general charge, we say the doctrine of merger does apply, and for this and other reasons the verdict must be for the defendant. [13]

6. The plaintiffs cannot recover in this action because of the limitation contained in the sixth section of the act of the 22d of April, 1856, which provides " that no right of entry shall accrue, or action be maintained for specific performance of any contract for the sale of any real estate, or for damages for non-compliance of any such contract, or to enforce any equity of redemption after re-entry made for any condition broken, or to enforce any implied or resulting trust as to realty but within five years after such contract was made, or such equity or trust accrued with the right of entry, unless such contract shall give a longer time for its performance or there has been in part a

substantial performance, or such contract, equity of redemption or trust shall have been acknowledged by writing to subsist by the party to be charged therewith within said period." *Answer:* This point is affirmed. [15]

7. That under all the evidence in the case, the verdict must be for the defendant. *Answer:* After what we have already stated, it follows that this point must likewise be affirmed. You will therefore render your verdict for the defendant. [16, 17]

Verdict and judgment for defendant. Plaintiffs appealed.

*Errors assigned* were (1–16) above instructions, quoting them.

*Donald E. Dufton* and *Aug. S. Landis, E. H. Flick* with them, for appellants.—The jury were not only competent, but bound to read the disputed words, and ascertain what they meant: Armstrong v. Burrows, 6 Watts, 268; Cabarga v. Seeger, 17 Pa. 519; 2 Parsons on Contracts, 6th ed. secs. 555, 556.

Equity treats things agreed to be done as actually performed, and treats the vendor (Reiger) as a trustee for the purchaser (Lulay) of the estate sold: 1 Sugden on Vendors, 14th ed. p. 270; Adams' Equity, note 1; White v. Patterson, 139 Pa. 429; Sutter v. Ling, 25 Pa. 467; Siter & Co.'s App., 26 Pa. 180; Ins. Co. v. Dunham, 117 Pa. 475.

The act of 1856 is an act of limitation against the cestui que trust, unless he is in possession, or his contract is in writing.

This case is the very exception prescribed in the act, if there was any question about its being the case of a resulting trust. But it is not the case of a trust. It was a sale evidenced by a writing, and duly recorded, with the consideration paid in full long before Barnes bought: Clark v. Trindle, 52 Pa. 495; Best v. Campbell, 62 Pa. 478.

The general principle in the doctrine of merger is that a less interest always becomes a larger, and the smaller estate always becomes greater: 2 Blk. 177: Williams on Real Estate, 281. But in this case the court reversed the legal operation of the rule by diminishing the interest expressly sold and to be conveyed.

The doctrine of merger will not, we think, under our case, ordinarily be held to apply against the intention of the par-

ties : Hessel v. Johnson, 129 Pa. 179; Moore v. Bank, 8 W.
138; Duncan v. Drury, 9 Pa. 332; Close v. Zell, 141 Pa. 390;
Stockton v. Gould, 149 Pa. 68; McGowan v. Bailey, 146 Pa.
572.

If the subject of the contract is described, parol evidence is
admissible to apply the description to the land : Smith & Fleek's
App., 69 Pa. 474; Ross v. Baker, 72 Pa. 186; Colt v. Selden,
5 Watts, 525; Lowry v. Mehaffy, 10 Watts, 387; McFarson's
App., 11 Pa. 503; Shoofstall v. Adams, 2 Grant, 209; Bother-
ton v. Livingston, 3 W. & S. 337; Troup v. Troup, 87 Pa. 149.

The doctrine of merger could not apply in this case : Kings-
ley v. Hillsdale Coal & Iron Co., 144 Pa. 613; Hope's App.,
29 W. N. C. 365; Montooth v. Gamble, 123 Pa. 240: Fair-
child v. Furnace Co., 128 Pa. 485; Armstrong v. Caldwell, 53
Pa. 284; Algonquin Coal Co. v. Northern Coal & Iron Co.,
162 Pa. 114.

*Alvin Evans,* for appellee.—The contract is too vague and
uncertain and contains no such descriptions, or other essentials,
as would warrant a chancellor to decree specific performance,
or authorize the submission of the case to a jury : Parrish v.
Koons, 1 Parson's Select Equity Cases, 78; Eargood's Est., 1
Pear. 400; Peebles v. Reading, 8 S. & R. 484; Pennock v.
Freeman, 1 Watts, 401; Rife v. Geyer, 59 Pa. 396; McBarron
v. Glass, 30 Pa. 133; Todd v. Campbell, 32 Pa. 252; Bennett
v. Fulmer, 49 Pa. 162; Miller v. Hartle, 53 P. 111; Church v.
Ruland, 64 Pa. 441; Faust v. Haas, 73 Pa. 300; 22 Eng. &
Am. Ency. of Law, 963; Soles v. Hickman, 20 Pa. 180; Burns
v. McCabe, 72 Pa. 313; Mellon v. Davison, 123 Pa. 298; Ruff's
App., 117 Pa. 310; Smith and Fleek's App., 69 Pa. 474. ✦

From the agreement itself it is plain that the subject-matter
was the sale and purchase of one hundred and twenty-eight
acres of land, which is clearly described therein, and all other
matters mentioned must necessarily relate to the subject of the
contract.

The contract being executory was merged in the deeds which
were subsequently executed and accepted in pursuance thereof :
Creigh v. Beelin, 1 W. & S. 83; Crotzer v. Russell, 9 S. & R.
78; Moser v. Miller, 7 Watts, 156; Gregory v. Griffin, 1 Pa.
211; Jones v. Wood, 16 Pa. 25; Seitzinger v. Weaver, 1 R.

384; Williams v. Hathway, 19 Pick. 488; Hollenback's App., 121 Pa. 322; Hessel v. Johnson, 129 Pa. 179; Sutter v. Ling, 25 Pa. 467; Siter's App., 26 Pa. 180; Ins. Co. v. Dunham, 117 Pa. 475.

The fact that the agreement of January 10, 1871, was recorded, was not constructive notice to a subsequent purchaser that Lulay had any interest in or title to any part of the coal in the Reiger land.

The act of April 22, 1856, intervenes as a bar to a recovery under the evidence in this case : Rider v. Maul, 70 Pa. 22; Christy v. Sill, 95 Pa. 387; Way v. Hooton, 156 Pa. 18; Barry v. Hill & Gillespie, 166 Pa. 350; Silliman v. Haas, 151 Pa. 52; Best v. Campbell, 62 Pa. 478.

Whilst the questions of law involved control this case, yet the plaintiffs' claim has no foundation in fact.

Opinion by Mr. Justice Green, January 6, 1896 :

We find ourselves quite unable to agree with the learned court below as to the principles upon which this case was tried. The most important of the rulings was that the fifth clause of the agreement between Anton Reiger and Adam Lulay was so vague and uncertain in its terms that it could not be enforced by a chancellor or by a verdict in ejectment. Entertaining this view the learned court in the general charge, and in answer to the defendant's point, withdrew the case from the jury, and directed a verdict for the defendant. An examination of the agreement and the testimony impels us to a very different conclusion. The agreement being drawn by an illiterate German is, of course, crude, inartistic, and not by any means so precise and definite in· its terms as it should have been. But these defects are far short of that vagueness and uncertainty which renders an instrument void for that reason. The agreement was written in the German language. Two translations of it were given in evidence, one by the plaintiffs and the other by the defendant, but the differences are so trivial that either may be accepted as correct without varying the result. One aspect of the paper is beyond all dispute and is not questioned. That is, that one feature of the contract was a positive agreement by Reiger to sell to Lulay a designated tract of land containing one hundred and twenty-eight acres, described by adjoiners only,

and having thereon erected a dwelling house, sawmill and part of a barn newly erected. Neither the state, the county, nor the township where the tract was located, is stated in the agreement, and if there was any dispute upon that subject, the ambiguity could only be helped by parol testimony which of course would be received for that purpose. But there is no dispute and both parties agree, that the tract was located in Susquehanna township in the county of Cambria, Pennsylvania, and that it was part of a larger tract of two hundred and sixty-four acres and seventy-seven perches, the equitable title to which was vested in the grantor Anton Reiger, the legal title being held by two men named Bergstresser living in Missouri.

The other subject of the conveyance was a right to mine coal from another piece of property, and this is provided for in the fifth clause of the agreement and is the matter in controversy. In the plaintiffs' translation the words are as follows, " the coal right in the northern hill, so far as to the centre, between the southern and northern boundary, vests in the purchaser, and he has the right to dig the coal as his property, and to make a road to the coal bank over the shortest and most passable route." The sixth clause relates to the same matter and should be read in this connection. It is in these words, " Anton Reiger has likewise the right of access to the coal over the shortest and most passable route that will cause the least damage, on the southern side and if necessary prospect for coal, and to open a coal mine on the said purchaser's Adam Lulay's, property, but he is not allowed to take out coal over the middle."

It is perfectly clear by the fifth section of the agreement, that Reiger sold to Lulay the right to dig coal as his, Lulay's property, on another property than the one hundred and twenty-eight acres. There is no doubt, vagueness or uncertainty as to that. It was an absolute agreement to sell, in fact an actual sale, under the phraseology of the fifth clause, of all the coal underlying the surface of the tract referred to, and it was a fee simple estate in the coal, thus severing it from the land on the surface. Nothing was left to ascertain but the identity of the tract underlaid by the coal. It was to be the " coal right in the northern hill, as far as to the center between the southern and northern boundary." Of course parol testimony was admissible to explain the ambiguity and such evidence was offered,

admitted and delivered, and a reading of it removes every vestige of doubt or uncertainty as to the exact location of the land. Anton Reiger lived on the tract of one hundred and twenty-eight acres which he sold to Lulay. But that was only a part of the whole tract of two hundred and sixty-four acres and seventy-seven perches of which he was the equitable owner. The remaining part of the whole tract contained one hundred and thirty-six acres and this was retained by Reiger. But there was coal on this part, and there was a " northern hill " part. That one hundred and thirty-six acres part extended in a north and south direction, and it was only necessary to run an east and west line through the center of that tract in order to determine the exact locality of the land under which the coal in place was sold. This was done, and on the trial a surveyor testified that he had run the east and west line through the center; a draft was made and given in evidence showing the lines of the whole piece by courses and distances; it immediately adjoined the one hundred and twenty-eight acres tract and showed a plain and natural connection between that tract and the part containing the coal. In connection with the testimony of Sheriff, the scrivener who wrote the agreement, the whole subject was rendered as clear as the sun at noonday, and every element of uncertainty as to the only matter of doubt in the case, to wit, the identity of the land intended, instantly vanished. Sheriff, after stating that he was with both the parties and that Reiger wanted to sell the one hundred and twenty-eight acre tract, that Reiger offered to sell the tract for $2,500, and that Lulay declined to give that much and that they separated in order to examine some other land, but afterwards returned to Reiger's in the afternoon of the same day, was asked to state what occurred when they went back to Reiger's. He replied, " Well when we got back to Reiger's, then I told Reiger, that is Jacob Sheriff told Reiger, ' Now Lulay is coming down; he wants to buy coal along with his one hundred and twenty-eight acres.' I then told him, Reiger, ' you have a bank open—you keep that; now on the opposite side of the hill there is coal in that too.' So after talking they agreed that Reiger should keep the coal where the vein was opened and Lulay would get the hill where no veins were opened, so that contract was made that he should get the coal right in that hill and the one hundred and twenty-

eight acres in land for $2,500.   Then Reiger asked me to write
the agreement.   Gentlemen, you must excuse me, I am not
very plain in English.   So I asked him where is the north and
where is the south and where is the east and where is west,
and I wrote the line for one hundred and twenty-eight acres
as near as I can from the points of the compass, and this is the
coal right.   I wrote it in the northern hill.   He told me that
hill and I wrote it as was his understanding, and he told me
himself that was the hill.   Q. Reiger told you?   A. Yes,
Reiger told me himself the coal right in the northern hill
through the middle between the southern and northern bound-
aries.   So that means in other words—Defendant's counsel—
We object.   Never mind what it means; you just tell us what
they said.   A. Well it was through the middle between the
northern and southern boundaries, and the purchaser has the
right to dig the coal as his own property, and to have the right
to make a road to the coal bank, the shortest and most suitable
route which can be made for hauling.   Q. That was the un-
derstanding, was it?   A. That was the understanding and so
I wrote the agreement."   On cross-examination he testified,
" There is a steep hill on the south side and a big hill on the
north side, and that goes west and that hill goes east, and when
on top of that hill I asked him, ' where is north, where is south,
where is east and where is west,' so I could write the agree-
ment, and I put the coal right in the northern mound between
the northern and southern boundary, and the purchaser had
the right to dig the coal on that hill as his property and to
make a road the shortest way where he could make it suitable
for hauling."   Again he testified, explaining the draft to the
jury, " Here is the northern hill and that coal right goes to
the middle between the northern and southern boundary.   Here
is the southern hill.   The coal right in the northern hill is
Lulay's and in the southern part was for Reiger himself."
There was much more of the same kind of testimony from the
witness.   None of it was contradicted or impeached in any
way, and to our minds it affords a most complete and satisfac-
tory solution of the question as to the identity of the land,
under which the coal sold by the agreement laid.   It is really
so extremely plain and simple that no extended argument or
citation of authorities is needed in its support.   The error of

the learned court below consisted in the wrong application of
a correct rule of law that where a contract or other paper is so
vague and uncertain that it cannot be interpreted it falls for
that reason.   But that principle has no application here because
this contract in all its essential parts is neither vague nor uncer-
tain.   It is a clearly expressed agreement to sell a tract of
one hundred and twenty-eight acres of land, and all the coal
underlying another tract of land.   In the description of the
land overlying the coal there is an inadequacy of statement of
identifying particulars, and the only necessity of the plaintiffs'
case was to supply this deficiency.   This has always been
allowed, and in this case the explanation was of the clearest
and most satisfactory character.   The whole case should clearly
have been submitted to the jury on all the evidence, with in-
structions that if they found that the coal claimed by the plain-
tiffs was contained within the land described in the plaintiffs'
writ they were entitled to recover.   We sustain the several
assignments of error which relate to this subject.

Adam Lulay the grantee in the agreement of sale which was
dated June 10, 1871, had it recorded in the proper office on
April 3, 1872.   On the trial the plaintiffs' counsel submitted
their third point that, being properly recorded and indexed it
was constructive notice to the world of his rights under the
agreement of which the defendant was bound to take notice.
The court below answered the point by saying that it was no-
tice of any rights which Lulay had when placed on record, but
when it was followed within a few years by a deed vesting a
complete title to the premises in Reiger who continued for
some seventeen years in the exclusive possession thereof be-
fore selling to the defendant the latter was not bound by such
notice.

We think this answer was erroneous as well as the answers
to the fourth and fifth points of the plaintiffs for obvious rea-
sons.   The conveyance made to Reiger subsequently to the
deed, was simply the conveyance of the legal title by the Berg-
stressers to Reiger for the one hundred and thirty-six acres
adjoining the one hundred and twenty-eight acres sold to
Lulay.   The Bergstressers were not parties to the agreement
of sale between Reiger and Lulay, and they were therefore not
in a position to affect Lulay's rights under that agreement by

any conveyance they might to make to Reiger.   Consequently no such conveyance could deprive Lulay of the benefit of the recording of his agreement, as notice of all his rights under the agreement.   As to the subsequent possession of the surface of the one hundred and thirty-six acres tract by Reiger, it was not in any degree adverse to the right of possession of the coal underneath the surface by Lulay and was therefore neither hostile, visible, notorious nor continuous. It was no possession of the coal whatever.   The coal was severed from the surface by the agreement, and the estate of Lulay in the coal was a fee simple estate, which was entirely consistent with Reiger's estate in the surface.   Lulay's recorded agreement was therefore notice of all his rights, legal and equitable, under that instrument, and its quality as such could not be affected by any conveyance made by anybody subsequently to the date of its record.   The question of the effect of any such conveyance is an entirely different question, depending upon its own merits, but not capable of diminishing or changing the effect of the record as constructive notice to all subsequent purchasers or incumbrancers. Lulay had not only the title conferred by the agreement, but he had entered into full possession of the one hundred and twenty-eight acre tract in 1872, and had paid all the purchase money by the year 1874, and that purchase money included the price of the coal.   Any purchaser from Reiger thereafter would be bound to examine the record for conveyances by him, and if he had done so he would have discovered the conveyance of the coal in the agreement, and this would put upon him the duty of inquiry from the parties as to where the coal was located, and this would have led to the discovery of the actual facts.

The learned court below seemed to think, and so charged, that Adam Lulay was bound to take actual possession of the coal, in order to preserve his title under the agreement, and this also was a mistake.   A purchaser of land in fee simple may or may not take possession of his purchase at his pleasure. His title, if he has a good one, is just as perfect with, or without possession.   Of course his title may become affected by an adverse possession taken by a stranger if it has continued for twenty-one years and possesses all the other requirements of that kind of title, but there was nothing of that kind in this case.   We therefore sustain the third, fourth, fifth and tenth assignments.

What was said by the learned court below in relation to the act of 1856 and its application to this case, we consider, was a mistake. That act, in our opinion, has nothing to do with the case. The right of Adam Lulay under the agreement was precisely the same as the right of any ordinary purchaser of lands by deed in fee simple. He held his title by the same kind of conveyance; his estate was a fee simple estate in the coal, he gave notice of it to all the world by placing it on record, he paid the purchase money in full, and he had not the least occasion to invoke the aid of the act of 1856 in the smallest degree. There are no facts in this case that bring it within the operation of any of the provisions of this act, and it was therefore error to make the rulings complained of in the sixth, seventh, eighth, ninth and fifteenth assignments, and they are all sustained.

In March, 1873, the Bergstressers made a conveyance of their legal title to Anton Reiger of the one hundred and thirty-six acre tract, and to Adam Lulay of the one hundred and twenty-eight acre tract. In the latter deed nothing was said of the coal which was sold by Reiger to Lulay by the article of agreement between them. The learned court below held that the agreement was merged in the deed and all right to the coal was thereby forfeited. If this deed had been made directly by Reiger to Lulay it is not at all clear that such an effect would have followed, because the fifth clause of the agreement is, by its terms, substantially a present sale of the coal completed by the execution of the agreement and requiring no further conveyance to perfect it.

But the deed from the Bergstressers was a deed from persons who were strangers to that agreement. They had no lot or parcel in it, and there is every reason to believe they had no knowledge of it as they lived in the state of Missouri. They had nothing to do with the coal as a distinct subject of conveyance. The only concern they had in the whole transaction was to pass the bare legal title to the land held by them, which they did by the two deeds in question. The consideration recited in the deed is $2,000, whereas $2,500 was the consideration named in the agreement. That which Reiger was to convey, if any conveyance were necessary, was the title to the coal. That was not done nor was it really necessary that it should be done.

How then can any legal inference be drawn that by the acceptance of the deed from the Bergstressers for the legal title to the surface of the one hundred and twenty-eight acre tract, it was intended to forego all claim to the coal from Reiger. We see nothing to justify such an inference. And as the deed was made by a stranger to the agreement we can see no basis for the application of the doctrine of merger when there was no relation of contract between the grantor and grantee in the deed, and the grantor could not assume to convey the coal without intermeddling in a contract to which he was not a party and in which he had no interest. Upon strict reasoning there was no necessity for any other conveyance of the coal than that contained in the original agreement, and hence there was no basis for an inference other than that the deed for the legal title to the one hundred and twenty-eight acres was a part execution of the agreement, and as to the coal that the agreement had already executed itself.

All the assignments except the fourteenth are sustained. We think the case must necessarily go to the jury to apply the parol evidence to the description of the land containing the coal.

Judgment reversed and new venire awarded.