# Saltsburg Colliery Company, Appellant, *v.* Trucks Coal Mining Company.

*Real estate—Coal—Right to mine—Conveyance of coal—Severance—Corporeal and incorporeal hereditaments.*

A deed conveying to the grantees, their heirs and assigns, a certain lot of ground "with the privilege of mining and taking coal out of the hill opposite the land hereby sold to the said Trucks under the land of said Richardson and Company as long as they may think proper," is a sale of the coal in place. Such a conveyance constituted a severance by the grantors of the coal from the rest of their land, and was not a mere incorporeal hereditament to mine the coal.

KELLER, J., dissents.

Argued April 10, 1923.   Appeal, No. 129, April T., 1923, by plaintiff, from judgment of C. P. Armstrong County, March T., 1921, No. 6, in favor of defendant non obstante veredicto in the case of Saltsburg Colliery Company, a corporation under the laws of Pennsylvania, v. Trucks Coal Mining Company, a corporation representing to be incorporated under the laws of Delaware.   Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Trespass to recover damages for the mining and removing of coal from the lands of the plaintiff.   Before KING, P. J.

The facts are stated in the opinion of the Superior Court.

The court directed a verdict in favor of the plaintiff. Subsequently, on motion, judgment was entered in favor of the defendant non obstante veredicto.   Plaintiff appealed.

*Error assigned* was the judgment of the court.

*A. J. Barron,* of *Altar, Wright & Barron,* and with him *Floy C. Jones* and *R. L. Ralston,* for appellant.—The mining privilege is an incorporated hereditament which was revocable and has been revoked: Gloninger v. Franklin Coal Co., 55 Pa. 9; Johnstown Iron Co. v. The Cambria Iron Co., 32 Pa. 241; Grubb v. Grubb, 74 Pa. 25; Funk v. Haldeman, 53 Pa. 229; Carnahan v. Brown, 60 Pa. 23; Jennings Bros. & Co., Ltd., v. Beale, 158 Pa. 283; LeFevre v. LeFevre and others, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Huff v. McCauley, 53 Pa. 206; Reagan v. Curran, 226 Pa. 265.

*H. A. Heilman,* and with him *H. L. Golden,* for appellee.—The conveyance to the Trucks was an absolute and exclusive conveyance of all the coal in question: Caldwell v. Fulton, 31 Pa. 475; Advance Industrial Supply

Co. v. Eagle Metallic Copper Co., 267 Pa. 15; Little v. Greek, 233 Pa. 534; Safe Deposit & Trust Co. of Pittsburgh v. Bovard and Sefang Mfg. Co., 229 Pa. 295; Miles v. N. Y., Susquehanna & W. Coal Co., 250 Pa. 147.

OPINION BY LINN, J., July 12, 1923:

Plaintiff sued for treble damages under the Act of May 8, 1876, P. L. 142, for coal mined from its land. Defendant admitted the mining, and claimed ownership of the coal in place. At the trial, the court directed a verdict for plaintiff, but subsequently granted defendant's motion for judgment n. o. v. Plaintiff appeals. The disposition of the appeal depends on the interpretation of a deed.

In May, 1844, Richardson and Company agreed with B. Trucks, George Trucks and Thomas Trucks to sell to them "salt wells, with all the buildings, improvements and land thereunto belonging," [described] "for the sum of 2,500 barrels of good merchantable salt, payable in five years" [at 500 barrels per year]; "said Richardson and Company agrees to give to said widow Trucks, George Trucks and Thomas Trucks, a good and sufficient deed for said property so soon as the above payments are made or sooner if good security is given for above payments. Said widow Trucks, George Trucks and Thomas Trucks, their heirs and assigns, are to have the privilege of mining and taking coal out of the hill opposite their land under the land of said Richardson and Company so long as they may think proper. And it is further agreed that if said widow Trucks, George Trucks and Thomas Trucks fails, in any one year of the said year of the said term of five years to deliver the salt as above stated, they shall pay cash in lieu of salt." On June 24, 1851, a deed (duly recorded) was made by Shorb et al. [Richardson] to Bridget Trucks and her two sons, granting and conveying the land, 61 acres and 30 perches, *"with the privilege of mining and taking coal out of the hill opposite the land hereby sold to the said Trucks under the land of*

*said Richardson and Company as long as they may think proper, according to the stipulation contained in article of agreement* with William H. Richardson and Company dated May 16, 1848 (1844?). To have and to hold the said hereditaments and premises hereby granted or mentioned or intended so to be, with the appurtenances unto the said parties of the second part, their heirs and assigns forever." The consideration—2,500 barrels of salt —was recited—"fully paid and delivered." We have italicized the part of the deed giving rise to the dispute.

Defendant offered deeds purporting to convey to it the Trucks' title to the 61 acres together with the coal under the Richardson land conveyed by the grant just quoted. The evidence shows the mining complained of was out of the "hill opposite their land [the Trucks' land] under the land of said Richardson and Company" which surrounds the Trucks 61-acre tract on three sides. Plaintiff claims the fee to 194 acres (so bounding the 61-acre tract on three sides), by conveyances going back to the Richardson title, at least one of which, offered in evidence, contained the following pertinent reservation: "also reserving out of tract No. 3 [the 194-acre tract]......the right to Bridget Trucks and Sons and their heirs and assigns, to take coal out of said tract as assured and conveyed to them by Lyons-Shorb and Co., [Richardson] and granted by their deed of release to them upon the conditions and terms therein expressed"; concerning such reservation, see Lillibridge v. Coal Co., 143 Pa. 293, at 307.

There is evidence that the Truckses mined some coal out of the 194-acre tract, though neither how much, nor when, save that it was long ago, but loss of right by adverse possession is not suggested: Armstrong v. Caldwell, 53 Pa. 284, 287.

Appellant contends that the Truckses took an incorporeal hereditament in the 194-acre tract, and that defendant had no right to it for several reasons: 1. that

it was a revocable license which has been revoked; 2.
that it was indivisible and was divided by the Truckses;
3. that it was an easement which has not been conveyed
by deeds under which appellee claims and could not pass
as appurtenant to the 61 acres; 4. that it has been
abandoned or lost by nonuser.

Appellee contends that the deed of 1851 vested in the
Truckses a fee in all the coal in the hill opposite their
61-acre tract.

The decision of this appeal, therefore, depends on the
meaning of the deed of 1851 granting and conveying to
the Truckses the tract of 61 acres and 30 perches "with
the privilege of mining and taking coal out of the hill
......under the land of said Richardson and Company
as long as they may think proper, according to the
stipulation."

The decisions to which we shall refer require us to
hold that the grantees took a fee to all the coal described.
In Caldwell v. Fulton, 31 Pa. 475, the interpretation of
a grant of coal was twice considered (pp. 476 and 482),
and twice thereafter it was adhered to: Caldwell v. Cope-
land, 37 Pa. 427, 430; Armstrong v. Caldwell, supra.
Caldwell sued Fulton for mining on land which plain-
tiff claimed by descent from his father, who had con-
veyed to Fulton's predecessor Greer, a 16-acre tract,
with "Also, the full right, title and privilege of digging
and taking away stone coal, to any extent the said George
Greer may think proper to do, or cause to be done, under
any of the land now owned and occupied by said James
Caldwell; provided, nevertheless, the entrance thereto,
and the discharge therefrom, be on the foregoing de-
scribed premises," [16-acre tract]. Caldwell contended
an incorporeal hereditaments was granted, but the court
held it was a sale of the coal. The following quotations
from the opinions of the court are particularly applicable
to the contentions made by the parties to the present
appeal and make it unnecessary for us to add anything
to the discussion: "But was this the grant of no more

than an incorporeal hereditament? Caldwell reserved no interest himself. He sold for a valuable consideration, all he had in the sixteen acres, and all the coal in his other land. I say all, because the grant is limited to no time, or quantity, or purpose, or person. The full right to take stone coal to any extent the grantee, his heirs or assigns, may think proper to do, or cause to be done, are not, perhaps, the best chosen words for describing the corpus; but what less than the whole of the coal can they be construed to mean? If not the whole, how much coal is granted? Can a reservation to the grantor be implied, in the face of terms so large? That were to reverse the maxim that deeds are to be taken most strongly against the grantor. The will of the grantee was the measure of the grant. Not only he, his heirs and assigns, were to take ad libitum, but might cause to be taken, without stint. The grantee might plant a miner on every available foot of the coal, under that deed. There was one only condition, that the entrance to the coal, and the discharge therefrom, should be on the sixteen acres, and because this was expressed, no other was intended. Expressio unius exclusio alterius. Subject to that condition alone, the grantee was invested with complete dominion over the coal. What room was left for the grantor? Might he too mine coal? Assuredly not, against the consent of his alienee, for he had sold all the coal that alienee might think proper to take, or cause to be taken. And if the grantor might not mine of right, then the grant was total; he might not take a part, because he had conveyed the whole. There are many untechnical words, which, receiving an interpretation according to substance, are held to vest effectual estates.....For these reasons, drawn both from an analysis of the deed itself, and from the principles of interpretation, as applied to written instruments, we conclude that Caldwell sold and conveyed to Greer the absolute and exclusive right to all the coal under his land; and from this it must necessarily follow, it was a corporeal, and not an incorporeal interest.

An exclusive right to all the coal, to be taken, without limitation, except as to the point of ingress and egress, is a sale of the coal itself; and there is nothing incorporeal about coal. It is included in the definition of land, and those hereditaments only are incorporeal which are not land......

"We hold, in conclusion, that the parties to the deed of May 27, 1831, intended an absolute and exclusive grant of all the coal under the grantor's land; that though severed from the surface, it was still a conveyance of land, and not a mere license or common. The consequence is, that the grantees held it as other real estate is held, and might part it among themselves, as land is divided; and that the defendants, entering in pursuance of such partition, were not trespassers, and ought to have had the judgment."

After another trial, the same question was reargued with the same conclusion: (31 Pa. 482). Mr. Justice STRONG then said: "Applying these principles to the case in hand, why was not the deed of Caldwell to Greer a conveyance of the coal in the land owned and occupied by the grantor? Because, says the plaintiff in error, it is not a grant of the thing itself, but of a right to take it, and until it is seized or taken the property in the thing remains in the grantor. But if the conveyance of the whole use of a thing, and of the absolute dominion over it, is a grant of the thing itself, only differing in the mode of describing the subject, it is not easy to see what more Caldwell could have sold than he did. If in another form of words he had described the coal as the subject of the grant, Greer would have possessed no greater beneficial rights than were given to him by the form adopted. The ownership of the coal in the ground is but a 'full right, title and privilege' to dig and carry it away, nothing more, nothing less. The words employed in the deed express absolute dominion, and complete enjoyment. These constitute property, and all that is understood in proprietorship. Again, says the plaintiff in error, this

is but a grant of a right to take and carry away part of the profits, and that while a grant of a right to take all the rents, issues, and profits of a tract of land is equivalent to a conveyance of the land itself, because it embraces their whole usufruct, a grant of a right to take part, such as 'iron ore, coals,' or 'minerals,' is not. It is said that in such a case the grantee can only take in common with the grantor. The argument is based upon a misconception. The subject alleged to have been granted here is not the tract of land, but the coal in it, which, as we have seen, is capable of a separate conveyance, and which may be vested in one person, while the ownership of the tract of land, as such, may be another's. The alleged subject of the grant then being the coal in the land, the substratum, the argument is inapplicable. The whole usufruct of that, as well as the entire dominion over it, was granted. The deed is not a conveyance of part of the usufruct, nor of the usufruct of part of the coal, but of the entire enjoyment. As already said, there was no limit to the grantee's right but his own will. He could take out coal to any extent. He could cause it to be taken out to any extent, and at all times under any of the land. He was accountable to no one. His entrance to it and his exit from it were indeed required to be on his own land; but the right to take the coal itself was absolutely unlimited. It would seem, therefore, that, according to well-established rules of construction, the deed of Caldwell to Greer was a conveyance of the coal itself, and not of a mere easement, or incorporeal hereditament." See also Advance Industrial Supply Co. v. Eagle Metallic Copper Co. et al., 267 Pa. 15, particularly pages 20 to 23.

The Truckses.bought the right to mine and take coal from under the Richardson land "so long as they [and their assigns] may think proper"; it was a sale of the coal in place,—a severance by the grantors of the coal from the rest of their land. In this connection the language of Mr. Justice DEAN in Huss v. Jacobs, 210 Pa.

550 SALTSBURG COLLIERY CO. *v.* TRUCKS C. M. CO.

145, at p. 155, is not without interest: "While at the date of this deed 1859, the power to separate land horizontally into two or more estates by deed was not generally recognized and acted upon by the profession, although the power had long been settled in England as well as the construction to be given the instruments of severance, yet just about the date of this deed October, 1858, this court held in Caldwell v. Fulton, 31 Pa. 475: 'Coal and minerals in place are land. It is no longer to be doubted that they are subject to conveyance as such.' The tendency had been in many cases theretofore, to twist the right to the mineral into an incorporeal hereditament, a right issuing out of the land, instead of the land itself." See Lulay v. Barnes, 172 Pa. 331, at page 343; and Prager's Est., 74 Pa. Superior Ct. 592, 594.

It will be observed that the consideration for the whole grant was 2,500 barrels of salt, or "cash in lieu of salt," and the deed states it was paid and delivered. This element distinguishes and makes inapplicable the precedents relied on by appellant in which mining rights were granted for payment of royalty, as Mr. Justice STRONG specified in Clement et al. v. Youngman et al., 40 Pa. 341, at 344. The omission of the grantors to reserve coal to themselves likewise distinguishes the case from Gloninger v. Franklin Coal Co., 55 Pa. 9, and Carnahan v. Brown, 60 Pa. 23, in which the phraseology of the grants was held to show that the rights there questioned were not exclusive, while in Grubb's Case, 74 Pa. 25, the grant in express words was less than an estate in the ore itself.

Judgment affirmed.

Judge GAWTHROP concurs in the judgment, Judge KELLER dissents.