Guthrie, Appellant, *v.* Guthrie et al.

Argued April 11, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*George F. Whitmer,* with him *John M. Myers,* for appellant.

*M. H. Davis,* with him *A. A. Geary,* for appellees.

OPINION BY PARKER, J., June 26, 1939:

The plaintiff, J. A. Guthrie, brought an action in assumpsit against the Citizens Trust Company of Clarion to recover certain sums of money which had been paid to that bank on account of rentals due on an agreement for the production of oil and gas on land in which plaintiff asserted he had an interest. The same rentals were claimed by six sisters of the plaintiff as their property. By agreement an interpleader was framed wherein J. A. Guthrie was made plaintiff and his six sisters were made defendants to determine who was entitled to receive such rentals. The parties agreed to submit the issue as framed to the court below without a jury under Act of April 22, 1874, P. L. 109 (12 PS §688). Judgment was entered for the defendants and plaintiff has appealed. We are all of the opinion that the issue was correctly decided.

There are no disputed facts involved and the outcome depends upon the construction of an exception in a quit claim deed and the construction of an agreement for the production of oil and gas.

On December 21, 1907, the plaintiff was the owner of the undivided one-third and the defendants were the owners of the undivided two-thirds of 150 acres of land

in Clarion County and on that date plaintiff and his wife quit claimed to defendants the undivided one-third of the land in question, excepting and reserving to themselves, their heirs and assigns: "All their undivided one-third interest in all petroleum oil and gas in and under the premises hereinbefore described, with the full, free and complete right to enter upon the said lands to explore for, mine and remove said oil and gas, with all necessary rights and privileges for the successful operation of the same, without any liability for damages by reason of said operations, provided, however, that the term and period of the above reservation and exception of oil and gas, shall be for 20 years from September 25, 1905, provided always however, that if any of the parties hereto, their heirs or assigns, or any tenant in common or person holding any interest in the said oil or gas or the premises hereinbefore described, shall neglect or refuse to enter into a lease to any person or persons for the operating or mining and removing said oil and gas, then and in that event the said oil and gas, and the rights and privileges above mentioned, and everything reserved therewith, shall vest in and become absolutely the property of the said J. A. Guthrie, his heirs and assigns, and the time limit and term above mentioned shall become null and void."

On April 9, 1913, plaintiff and defendants joined in an agreement with the Apollo Gas Company whereby the owners "granted" all the oil and gas in and under the 150 acres, reserving one-eighth of the oil produced and providing with relation to the gas as follows: "If gas only is found, second party agrees to pay at the rate of $275.—for first well and $250. for each additional well—Dollars, each year, payable quarterly in advance for the product of each well while the same is being used off the premises so long as it does not interfere with the lessee's operating said well or wells by any means which may be adopted by the said lessee to secure

the production of oil or gas, care being taken not to waste."

Gas only was found in paying quantities and the rentals due therefor were paid to the Citizens Trust Company of Clarion for the benefit of the lessors under an arrangement not now important. Until September 25, 1925, the plaintiff received one-third and the defendants two-thirds of the royalties when, or shortly thereafter, defendants notified the trust company that they were entitled to receive all of the royalties from that date and that plaintiff was not entitled to any further share therein. The rentals in controversy were all paid and became due for gas produced after September 25, 1925.

It seems clear that the right to this rental, all of which was paid for a period after September 25, 1925, is to be determined by the terms of the exception contained in the quit claim deed. We are alone concerned with the right to the rental paid by the occupant of that part of the land known as the gas and that rental is the proportion of the whole rental which arose from and was payable on account of the undivided one-third excepted in the quit claim deed. Plaintiff, in 1907, parted with all interest that he had in the land except such as he at the time excepted from the grant. The meaning of the words of the exception is clear and not ambiguous. Its term was for twenty years from September 25, 1905. The parties recognized the fugitive nature of gas and even oil and that if gas or oil was developed in the neighborhood it would be to the interest of all the owners to get the gas before someone else did. It was therefore provided that grantors and grantees in the quit claim deed would join in a lease to anyone desiring to operate the land for that purpose. The parties also covenanted that the exception should only continue for twenty years, knowing that it is frequently not practicable or possible to remove all the oil or gas in twenty years. The term for years being

ended, plaintiff had no further interest in the land or any part thereof.

The appellant in his argument practically concedes all we have said with reference to the title as it existed before the lease to Apollo Gas Company was made but still contends that the tenant for years and the remaindermen having joined in one lease all rentals thereby became the property, of the lessors or grantors in the lease or agreement even though the rentals should not become due until after the twenty-year term had expired. He argues that the lease to the Apollo Gas Company was in fact an absolute sale of an estate in land, to wit, oil and gas in place, and relying on *Prager's Est.,* 74 Pa. Superior Ct. 592, says that the rentals, whether payable in a lump sum or in future installments, were the consideration for the grant and became the property of the grantors in the lease.

This argument ignores the fact that the seven grantors in the lease did not have equal interests in the property leased or granted. Plaintiff did not have the absolute ownership in one-third of the gas. He only owned the estate in one-third of the gas for twenty years while the other lessors each owned one-ninth of the gas and also a corresponding interest in the remainder in the one-third. If we treat the rentals as the consideration for an absolute grant of the gas to the Apollo Gas Company, which is what the appellant insists we should do, the grantors were entitled to share the consideration in the same proportions as they owned the entire fee. In the absence of an agreement to the contrary—as in *Orndoff v. Consumers Fuel Co.,* 308 Pa. 165, 162 A. 431—we must assume that they agreed so to do. When the plaintiff, prior to September 25, 1925, claimed and took one-third of the rental and not one-seventh, he recognized that principle. In view of the history of the property as to productiveness and longevity and taking into account the terms of the exception, the plaintiff has no cause to complain when he

received the full one-third of the whole royalty paid by the gas company for gas removed during his term for years. A life tenant of an estate in the oil or gas has no right to "open new mines or take minerals from the premises, except in case of mines opened by the former owner": *Marshall v. Mellon,* 179 Pa. 371, 375, 36 A. 201. This restriction was met by the terms of the exception in the quit claim deed where all parties agreed to join in a lease for oil and gas.

That the interest excepted by plaintiff in the quit claim deed was only a term for years is well settled in principle. It has been so held with reference to timber or growing trees (*Saltonstall v. Little,* 90 Pa. 422), and as to coal (*Greek v. Wylie,* 266 Pa. 18, 109 A. 529).

The case of *Blakley v. Marshall,* 174 Pa. 425, 34 A. 564, adopted the same principles as we have and the illustration furnished in the opinion in that case is illuminating. There plaintiffs, having a life estate in land and holding the remainder as trustees for their children, made a lease for oil as individuals and as trustees for the children. A case was stated to determine the ownership of royalties received from the lessees and it was held that the life tenants were entitled to receive interest on the royalties during life and at the termination of the life estate the corpus of the fund and the remaining royalties were payable to the remaindermen. In the opinion in that case the court said: (p. 429) "Assuming, for sake of illustration, that they had been of full age and sui juris, and instead of being parties, through their trustees to an oil lease, they and the tenants for life had united in a conveyance in fee of part of the land, could it in the absence of any agreement on the subject, be successfully claimed that the life tenants were entitled to the purchase money? We think not. There is no difference, in principle, between the two cases. As was held in *Stoughton's Appeal,* 88 Pa. 201, and other cases in same line, oil in place is a mineral, and being a mineral it is part of the

realty. An oil lease, investing the lessee with the right to remove all the oil in place, in the premises, in consideration of his giving the lessors a certain per centum thereof, is in legal effect a sale of a portion of the land and the proceeds represents the respective interests of the lessors in the premises. If there be life tenants and remaindermen, the former are entitled to the enjoyment of the fund (i. e. interest thereon) during life, and at the death of the survivor the corpus of the fund should go to the remaindermen. This is as nearly a just and equitable distribution as can be made."

In any view of the case, the plaintiff has no cause of complaint for he received not alone the income on the royalty paid during his term for years, but the entire corpus. He received at the least a proportion of the consideration which equaled his proportion of ownership in the entire estate in the oil and gas.

The judgment of the court below is affirmed.