Miller et ux., Appellants, *v.* Dierken et al.

Argued April 19, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Lee C. McCandless,* with him *James E. Marshall,* of *Marshall & McCandless,* for appellants.

*W. B. Purvis,* for appellees.

**390**

Opinion by Rhodes, J., September 13, 1943:

In this action of ejectment plaintiffs seek the forfeiture of an oil and gas lease because of the nonpayment of the royalty provided by the lease. Plaintiffs claim title to the fee. Defendants deny that plaintiffs are the parties entitled to the royalty; they contend that they are not only assignees of the lessee, by interim assignments, but also assignees of the royalty interest, and that they are therefore entitled to indeterminate possession as long as the wells on the land produce oil or gas according to the provisions of the lease.

The pleadings consisted of a statement of claim and abstract of title on the part of plaintiffs, and a plea and answer, abstract of title, and amended abstract of title on the part of defendants. At the trial the trial judge directed a verdict for defendants. Plaintiffs' motion for judgment n.o.v. was refused. This appeal by plaintiffs is from the judgment entered on the verdict.

The parties agree that the fee of the land in question was conveyed to Samuel C. T. Dodd, Trustee, on August 1, 1878, and by him to the Union Oil Company on April 2, 1880; also that on July 15, 1880, the Union Oil Company granted surface rights to Stephen F. Schultz "expressly excepting and reserving nevertheless to the said The Union Oil Company, its successors and assigns, all oil or gas wells now being operated on said premises ...... Also all the petroleum or rock oil and gas that is or may be now stored on said premises or that is under, in or appurtenant to the above described and granted tract of land ......" On October 20, 1884, the Union Oil Company leased to A. L. Frazier oil and mineral rights reserved from Schultz with provisions for forfeiture, in return, inter alia, for an oil royalty to the lessor, its successors or assigns, to be delivered to "such accessible Pipe Line Company as shall be designated and approved by" the lessor, its successors or assigns.

Plaintiffs established separate chains of title by which

both the surface rights of Schultz and the reversionary oil and mineral rights of the Union Oil Company, out of which the Frazier lease was carved, became vested in the plaintiffs. We assume, without deciding, that the Union Oil Company had a reversionary interest in the oil and minerals.[1] On the plaintiffs' own pleading there can be no doubt that it was to the reversionary interest in the oil and minerals that they succeeded, since the immediate grant from the Union Oil Company to the Forrest Oil Company, November 29, 1890, pleaded as a link in plaintiffs' title, and all the mesne grants thence into plaintiffs were made expressly subject to this lease. But in each of these grants there is also language to correspond with the following which appears in that from the Union Oil Company to the Forrest Oil Company:

"All said lands, oil rights and premises are conveyed subject to all sales of wells thereon and to any leases or sales of parts of said lands and premises or of interests therein heretofore made by The Union Oil Company or any of the former owners of same whether hereinbefore specifically mentioned or not, but any and all royalty or other interest in same reserved to or belonging to said The Union Oil Company or to which it

---

[1] "(1) A reversionary interest is any future interest left in a transferor or his successor in interest.

"(2) A reversion is any reversionary interest which is not subject to a condition precedent.

"(3) A possibility of reverter is any reversionary interest which is subject to a condition precedent." 2 Restatement of the Law, Property, §154, p. 525.

"...... a *possibility of reverter* ...... 'is not an estate, present or future, but merely a possibility of having a future estate ......' 'A reversion is the remnant of an estate *continuing in the grantor,* undisposed of, after the grant of a part of his interest' ": *Smith v. Glen Alden Coal Co. et al.,* 347 Pa. 290, at pages 302, 303, 32 A. 2d 227, at page 234.

See, also, "Interests Created by Oil and Gas Leases in Pennsylvania," 4 University of Pittsburgh Law Review 274-294, June, **1938.**

is or may be in any manner entitled is hereby granted, released, conveyed and confirmed unto the said The Forrest Oil Company, its successors and assigns forever."

Defendants likewise showed a chain of assignments of the right of the original lessee, Frazier, by which they became entitled to the entirety of this working interest. They also alleged that the royalty interest had, by virtue of an assignment antedating the lease, passed from the Union Oil Company to a partnership known as H. L. Taylor & Company, from which, by mesne assignments, it descended to defendants, and effected in them a merger of the working interest and the royalty interest, seven-eighths and one-eighth, respectively, of the oil produced.

The controversy would thus seem to present a question whether plaintiffs or defendants were the persons entitled to the royalty. The evidence reveals a number of circumstances which have some relevancy to this issue, and indicates, in the present obscurity of transactions which occurred sixty years ago, that defendants in possession under the Frazier lease by their own admission had succeeded, not to the royalty under that lease, but rather to a royalty out of earlier wells which were drilled under previous leases to other lessees. The Frazier lease from the Union Oil Company, dated October 20, 1884, was made subject to previous leases then in force; it refers to wells then in existence; and it provides that Frazier shall drill others. The first conveyance of the reversionary interest—Union Oil Company to Forrest Oil Company, November 29, 1890—was made subject to two grants. One was described as "the sale of McAllister wells 2, 3, and 4, as made to S. B. Gould and George Markart by The Union Oil Company, September 1, 1880," and the other was described as the Frazier lease. Defendants' claim to the royalty is pleaded as resting on an assignment by Union Oil Company to the Taylor partnership, which was prior to the Frazier lease creating the royalty. The date of the assignment as given in defendants' abstract

of title is April 1, 1880. In defendants' answer, paragraph V (f), it is alleged that the royalty interest in the Frazier lease was transferred to H. L. Taylor & Company on June 16, 1884. Both dates are in advance of the instrument creating the royalty—October 20, 1884. Even if it could be said that the royalty was one carried over from a lease which had run its term to a new lease, it seems unlikely that the new lease would make it payable to the Union Oil Company, if already assigned, without at least referring to the assignment. However, it is significant that the actual evidence of the assignment offered by defendants was a "division order" or notice of change of ownership of oil as given to the pipe line carrier, National Transit Company, and entered upon its books, dated April 1, 1884, and that such order related specifically to McAllister wells Nos. 3 and 4. This was offered as defendants' proof of ownership of the royalty under the Frazier lease.

On the other hand, there is plaintiffs' admission that the South Penn Oil Company, their immediate predecessor in title to the reversionary oil and minerals, and ostensible assignee of the Frazier royalty under the language of that series of grants of the reversionary interest, received no royalty during its period of ownership between April 1, 1892, and September 29, 1938. There was also testimony by defendants that the royalty had been paid to the Taylor partnership without exception to 1936 when defendants purchased the royalty interest. It is possible that defendants have been in possession of the working interest under one lease and have owned the royalty under another. It may have been this possibility that led defendants to plead title by adverse possession to both the working interest and the royalty in dispute.[2] We are of the opinion that

---

[2] The royalty right is a chose in action entitling the holder to delivery of distinct and different parcels of personalty from time to time. See 2 C. J. S. p. 884 et seq., "Adverse Possession of Chattels."

this position is untenable as to the working interest in the face of repeated admissions that defendants held it by grant. We are also of the opinion that there is no foundation for plaintiffs' contention that defendants in denying plaintiffs' ownership of the royalty interest are impugning the title of their lessor. Both parties acknowledge a common source of title—Union Oil Company whose title neither impugns. We think the question whether plaintiffs or defendants have been granted the royalty interest set as the price of the original lessee's tenancy under the Frazier lease could be tried without reflection upon the title of the lessor. It would serve no purpose to consider now other questions which might arise if that issue had been tried and determined against defendants. As the issue was never tried, we are concerned merely with the propriety of the ruling of the court below. The reason given by the court below for the directed verdict was the non-designation of a pipe line company to which the oil royalty was to be delivered. Plaintiffs have also assigned as error the trial judge's admission of the various division orders as evidence of possession of the oil removed from the land as personalty, and as evidence whether the realty from which this personalty was produced was owned by the owner of the personalty. The royalty interest was of course personalty (*Smith v. Glen Alden Coal Co. et al.,* 347 Pa. 290, 299, 32 A. 2d 227; *Robinson et al. v. Pierce et al.,* 278 Pa. 372, 378, 123 A. 324; *Prager's Estate,* 74 Pa. Superior Ct. 592, 594) ; and regardless of whether or not the division orders had any probative value this evidence had no bearing upon the disposition of the case, and this assignment of error would appear immaterial. The only matter for our determination is the correctness of the judgment.

We agree with the conclusion of the court below but not with the reason given. It is not the failure to designate a pipe line company that precludes recovery in this action by plaintiffs, but the failure to establish

that the wells on the property were drilled and the royalty interest thereunder created under the terms of the lease sought to be forfeited. Any designation of a pipe line company by plaintiffs would have been futile as defendants denied plaintiffs' right to any royalty. "No man is compelled to do a useless act, and if performance of a condition will not be followed by performance of the promise which is conditional, it is useless for the intended purpose and it is therefore unnecessary to perform the condition": 1 Restatement of the Law, Contracts, §306, comment a, pp. 451, 452. See, also, *Hampton v. Speckenagle,* 9 Serg. & R. 212, 221, 222.

Plaintiffs must recover on the strength of their own title and not on the weakness of defendants' title. *Artz v. Meister,* 278 Pa. 583, 586, 123 A. 501. Or, as said in *Robinson et al. v. Pierce et al.,* supra, p. 378, in an action of ejectment, plaintiffs must rest on the validity of their own title. They have failed to establish by title or otherwise the essentials for recovery.

It is reasonable to believe that the present wells were on the property on July 15, 1880, the date of the deed from the Union Oil Company to Stephen F. Schultz. Provision was made for such wells in the deed from the Union Oil Company to the Forrest Oil Company. There was no proof offered that the Union Oil Company at that time had any royalty or other interest in these wells if they existed prior to the Frazier lease. Plaintiffs likewise failed to establish that the present wells were drilled under the terms of the lease from the Union Oil Company to A. L. Frazier, dated October 20; 1884. This lease provided that it was "the intent and meaning of this instrument to give to the said party of the second part, his heirs and assigns, the right to mine and remove oil and gas or other mineral and volatile substances from said land produced by or from the wells drilled hereunder and no other or greater rights whatever." The title which plaintiffs have shown is to the

surface and to the Union Oil Company's reversionary rights in oil and minerals upon termination of the lease. The pleadings, oral admissions, and documentary proof of defendants all identify their possession as being under the Frazier lease. But defendants also allege that the two wells now in existence and held by them antedated this lease. This manifest inconsistency would appear to be a weakness in defendants' title, or right to possession, but this weakness is not sufficient to establish plaintiffs' title and sustain their action.

The assignments of error are overruled.

Judgment is affirmed.