# Duquesne Natural Gas Company *v.* Fefolt, Appellant.

Argued November 13, 1963. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Robert L. Ceisler,* for appellants.

*Paul A. Simmons,* with him *Tempest & Simmons,* for appellees.

OPINION BY WATKINS, J., March 19, 1964:

This appeal is from the judgment of the Court of Common Pleas of Washington County, sitting in equity, in an interpleader, by which it was determined that title to certain oil and gas was reserved to William Marlett, Jr., and Ruth Marlett, his wife, as an estate in land.

The issue, so determined, was whether ". . . reserving however, to first party, the equal one-eighth (⅛th) part of all oil produced and saved from said premises, to be delivered in the pipe line to the credit of the first party, free of charge . . ." and whether the "consideration in full to the grantor for each and every well so producing gas upon the said land shall be as follows: one-eighth (⅛th) part of all gas sold from each well" is personalty or realty and whether it passes with the land or remains the property of the original grantors-lessors.

In January, 1925, Joseph Fefolt and Hannah Fefolt, his wife, the appellants, entered into an oil and gas lease with Byers Oil & Gas Company. The real estate involved was conveyed to several successive grantees ending in William Marlett, Jr., and Ruth Marlett, his wife, the appellees, in July, 1960. The Marletts made demand for royalties in December, 1961. This interpleader was filed by the plaintiff company, Duquesne Natural Gas Company, an assignee of Byers Oil & Gas Company. The Fefolts granted and con-

veyed ". . . all the oil and gas in and under the following described premises", but in addition said, ". . . reserving however, to first party, the equal one-eighth (⅛th) part of all oil produced and saved from said premises, to be delivered in the pipe line to the credit of the first party, free of charge . . .". The Fefolts conveyed all their right, title and interest in said land to their daughter, Justine Roper, who in turn conveyed all her right, title and interest in said land to the Marletts.

The Fefolts contend that they conveyed all of the gas and oil rights in the said land to the Byers Oil & Gas Company, so causing a complete severance of all gas and oil in said land. They contend that the reservation of the one-eighth (⅛th) part was personalty only and did not pass with the conveyance to Justine Roper.

The Marletts contend that only seven-eighths (⅞ths) of said oil and gas was actually conveyed to Byers Oil & Gas Company. The reservation of the one-eighth (⅛th) interest remained vested as real property in the Fefolts and passed by deed to them.

All of the Pennsylvania cases are in accord that the original grant and conveyance by the Fefolts to the company created an estate in real property and severed the gas and oil from the rest of the real estate. The question posed here is whether the reservation of the one-eighth (⅛th) interest in gas and oil was a reservation of an estate in land or that the entire gas and oil interest in real estate vested in the grantee subject to the payment of a royalty upon the delivery of gas and/or oil out of the land and so personalty.

We agree with the court below that the property interest reserved, viz: ". . . one-eighth (⅛th) part of all gas sold from each well . . ." as is described in the oil and gas lease in this case is real property. *Penn-Ohio Gas Company v. Franks's Heirs,* 322 Pa. 233, 185 A. 280 (1936); *Barnsdall v. Bradford Gas Co.,* 225 Pa.

338, 74 A. 207 (1909). If the transfer of the oil and gas rights to the company conveys realty it seems to clearly and logically follow that the reservation clearly set forth in the agreement of a portion of that gas and oil to the grantors must also be realty even though payment was provided by royalties on delivery. This is also the holding of the courts in most of the oil and gas producing states. *Hager v. Stakes,* 116 Texas 453, 294 S.W. 835.

As the court below said: "It is true that the Act of 1909, P. L. 91, Section 1, does cause a fee simple title to be conveyed when those words are used unless the grant is expressly limited to a lesser estate; and as to seven-eighths (7/8ths) of said gas and oil, the Plaintiff does have a fee simple title. This is true for the reason the Supreme Court of Pennsylvania has held that the words 'grant and convey' do cause a severance of the oil and gas from the surface, but only to the extent of seven-eighths (7/8ths) where there is, as in the case at bar reservation in the grant of '. . . the equal one-eighth (1/8th) share of all oil produced and saved . . .'."

"The right of property in natural gas and oil ordinarily belongs to the owner of the land. The oil and gas are a part of the land so long as they are on it or in it or are subject to control therein. In other words, they are part of the land while they are in place. They can be severed from the ownership of the surface by grant or exception as separate corporeal rights. Accordingly, they may be the subject of a sale, separate and apart from the surface and from any minerals beneath it; they belong to the owner in fee, or his grantee, as long as they remain part of his property, although use of them is not possible until they are severed from the freehold exactly as done in the case of all other minerals beneath the surface. Hence, a freehold of inheritance may be created in oil and gas." 24 P.L.E. Mining, Oil and Gas §11, page 144.

So far as the law of property is concerned the ownership of oil and gas is similar to that of coal, where there are three estates of land, the coal itself, the surface and the right of support. *Smith v. Glen Alden Coal Co.*, 347 Pa. 290, 32 A. 2d 227 (1943).

The appellants rely heavily on *Prager's Estate,* 74 Pa. Superior Ct. 592 (1920), in which this Court held that a reservation such as appears in this case did not create a technical reservation and so the property in question passed entirely to the grantees and held that the royalties were personal property. The theory being that no oil or gas was reserved.

The language of the instrument in the *Prager's Estate* case is quite similar to that of the instant case but in view of the more recent decision of the Supreme Court in *Penn-Ohio Gas Company v. Franks's Heirs,* supra, we are constrained to agree with the court below that the reservation is effective in keeping title to an estate in land, to wit, the oil and gas to the extent of a one-eighth (⅛th) interest, in the grantors.

Judgment affirmed.

---

DISSENTING OPINION BY MONTGOMERY, J.:

I respectfully disagree with the majority in its conclusion that *Prager's Estate,* 74 Pa. Superior Ct. 592 (1920), does not control the present case. The instrument now before us is very similar to if not identical with the one in that case. It conveys to the Byers Oil and Gas Company, a trust, and to its successors and assigns *"all* the oil and gas in and under" the tract of land described therein; with the right to use water and the surface land for the purpose of producing and transporting oil, gas and water; "reserving however, to first party the equal one-eighth (1/8) part of all oil *produced* and *saved* from said premises, to be delivered in the pipe line to the credit of the first party free of charge, . . ." (Emphasis supplied)

It provides further: "If and as long as gas is found in sufficient quantity to convey to market, the consideration in full to the grantor for each, and every well so producing gas upon said land, shall be as follows: 1/8th part of all gas sold from each well"; also *"In addition to the above mentioned royalty,* first party shall have gas for fuel, for one dwelling, . . ." (Emphasis supplied)

This was a conveyance of the fee simple title to the oil and gas with limited rights to the surface and was not a lease or a license to explore.

*Penn-Ohio Gas Company v. Franks's Heirs,* 322 Pa. 233, 185 A. 280 (1936), referred to in the majority opinion, concerned a lease *for five years* and as much longer as the said premises were being drilled or operated for the production of oil and gas, yielding to the grantees one-eighth of all the oil saved from that produced, and providing for payment of $300 per year from each well which produced only gas. The important consideration in the case was the forfeiture clause, which was construed to cover only the rental of the tract and not the payments due from the operation of the gas wells. The Court did find that under the agreement a defeasible title to the oil and gas in place had vested in the appellant, citing *Barnsdall v. Bradford Gas Co.,* 225 Pa. 338, 24 A. 207 (1909). However, it did not decide whether the payments due from the sale of the gas or the one-eighth interest reserved in the oil and gas was personalty or realty. The opinion said (page 236), "We agree that the term by which these payments are designated does not affect the decision of this case, and that it is not necessary at this time to determine their precise character, . . ."

My study of *Barnsdall v. Bradford Gas Co.* also fails to disclose such a decision. The agreement in that case was not intended as a conveyance of the oil and gas but, on the contrary, was a lease of a tract of land

containing 100 acres "for the sole and only purpose of mining and operating for oil, gas and other minerals . . .". The consideration for the lease was the delivery in pipe lines to the credit of the lessors the equal one-eighth part of all the oil produced and saved from the premises. This was an action in ejectment for possession of the tract; and it was held that the lease was not merely the grant of a license to explore for minerals but was the grant of a corporeal hereditament entitling the lessees to possession. Although the question of title to the oil and gas was not at issue, the opinion contains a discussion of this subject but recognizes the distinction between oil and gas rights under a lease and those under a conveyance of oil and gas in place (page 344) : "He is not an absolute owner of the whole of the oil, as he would be were all the oil in place conveyed to him in fee."

I agree with the majority that in Pennsylvania the conveyance of oil and gas severs it from the land and creates a separate estate in real property. However, I cannot agree that a conveyance of all oil and gas, with a reservation of one-eighth of the oil produced and saved and one-eighth of the gas sold, reduces that whole estate to a seven-eighth interest. Oil and gas produced or saved, or sold, is much different from the one-eighth interest in such minerals in place. Much expense must be incurred before gas and oil in place becomes gas and oil produced or saved, or sold.

The primary rule to be observed in interpreting agreements of this nature is that the real intention of the parties, particularly that of the grantor, must be sought and carried out whenever possible. *Lacey v. Montgomery,* 181 Pa. Superior Ct. 640, 124 A. 2d 492 (1956). But where the terms of a deed are doubtful, the court will adopt that construction which is most strongly in favor of the grantee and against the grantor. *Lacey v. Montgomery,* supra. Had the parties to this

agreement intended to establish themselves as tenants in common in this new estate in the oil and gas, it would have been a very simple matter for them to have written the agreement so as to convey a seven-eighth interest in the oil and gas, or to have conveyed all and then excepted one-eighth in place.

If the majority opinion prevails, the effect of this agreement would be the conveyance of a seven-eighth interest in the oil and gas for the nominal consideration of one dollar; and I find nothing in the agreement that prevents the lessor from also drilling for their one-eighth interest in the oil and gas or compelling the lessees to produce for the lessors their one-eighth interest. Other incongruous situations might be mentioned if we should adhere to this view.

In my opinion, this question has been decided by *Prager's Estate.* Judge KELLER, later President Judge of this Court, examined the law thoroughly and concluded that the deed in that case was not a mere exclusive right or license to operate for oil and gas, nor a lease of the land for the purpose of operating for oil and gas, but was a sale and conveyance of all the oil and gas in place; and its effect was to sever these minerals from the surface or balance of the land, conveying them to the grantees, leaving the grantor his right to the consideration or purchase money as it fell due and was payable. The case held that, as to the estate conveyed, its operation was the same whether the consideration was a lump sum payable at once or in installments, or was in the nature of a royalty on the oil and gas produced and saved. Finally he said, "His interest in them was limited to the purchase money, that is, to the payment of a certain amount of money proportioned to the amount and pressure of the gas used off the premises and marketed, and to one-eighth of the oil 'produced and saved' from the premises, and was personal property which, at his death, vested in his execu-

tor and did not pass to his devisee. . . ." (page 594). Furthermore, our Supreme Court and this Court have considered *Prager's Estate* many times and have accepted it without question.[1]

I would reverse this judgment and enter it for appellants, Joseph Fefolt and Hannah Fefolt, his wife.

I dissent.

---

[1] *Smith v. Glen Alden Coal Company*, 347 Pa. 290, 295, 32 A. 2d 227, 231 (1943) ; *Waldron v. Wahl*, 286 Pa. 237, 239, 133 A. 252, 253 (1926) ; *Erie City v. Public Service Commission*, 278 Pa. 512, 521, 123 A. 471, 475 (1924) ; *Hamilton v. Foster*, 272 Pa. 95, 103, 116 A. 50, 52 (1922) ; *Miller v. Dierken*, 153 Pa. Superior Ct. 389, 394, 33 A. 2d 804, 807 (1943) ; *Burke v. Kerr*, 142 Pa. Superior Ct. 37, 39, 15 A. 2d 685, 686 (1940) ; *Guthrie v. Guthrie*, 135 Pa. Superior Ct. 588, 592, 7 A. 2d 137, 139 (1939) ; *Baird's Appeal*, 132 Pa. Superior Ct. 573, 584, 1 A. 2d 485, 490 (1938) ; *Saltsbury Colliery Co. v. Trucks Coal Mining Company*, 81 Pa. Superior Ct. 542, 550 (1923).