J. A34006/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RPITA, LLC, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MANUFACTURERS AND TRADERS | : | |
| TRUST COMPANY, | : | No. 1036 MDA 2014 |
| SOUTHWESTERN ENERGY CORP., | : | |
| TNT 1, LIMITED PARTNERSHIP | : | |

Appeal from the Order Entered May 21, 2014,
in the Court of Common Pleas of Susquehanna County
Civil Division at No. 2013-CV-1500

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND STABILE, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MAY 06, 2015**

RPITA, LLC, appeals[1] from the order of May 21, 2014, granting summary judgment for WM Capital, successor-in-interest to Manufacturers and Traders Trust Company, in this declaratory judgment action.  After careful review, we affirm.

> The action arises out of an oil and gas lease ("the Lease") originally entered into between TNT1, Limited Partnership ("TNT1") and Chesapeake Appalachia, LLC ("Chesapeake") on January 31, 2008 and the dispute is over the priority of royalty interests arising out of the Lease.  Prior to the entry of the Lease, TNT1 acquired large parcels of land throughout Susquehanna County.  Then, in 2004, Manufacturers and Traders Trust Company ("M&T"),

---

[1] RPITA was substituted as appellant for Peoples Neighborhood Bank on December 3, 2014.

WM Capital Partners XXXIX, LLC's ("WM Capital") predecessor-in-interest, granted loans to TNT1 and subsequently TNT1 executed and delivered to M&T a mortgage dated September 28, 2004. The mortgage was subsequently recorded. The mortgage pertained to eight parcels of land and specifically to the property subject to this action.

On January 31, 2008, TNT1 then entered into the Lease with Chesapeake. The Lease was subsequently assigned to Southwestern Energy Production Company ("SEPCO"). On August 5, 2008, TNT1 executed and delivered a Security Agreement to M&T granting M&T a security interest in TNT1's remaining assets including personal property and collateral. The UCC Financing Statement for the Security Agreement was filed on August 7, 2008.

In addition to the transactions with M&T, TNT1 also entered into an agreement with Peoples Neighborhood Bank ("PNB"). The agreement dated July 13, 2012 titled Assignment of Rents, Royalties and Profits ("Assignment") granted PNB the rights to all rents, income, royalties, and profits derived from the oil and gas lease.

On July 18, 2012, TNT1, SEPCO, and M&T entered into a Non-Disturbance and Attornment Agreement ("NDA Agreement"). Subsequently TNT1 defaulted on its loan obligations with M&T which led to M&T seeking the royalty payments. Following the demand for royalty payments, WM Capital became the successor-in-interest to the TNT1 loans when M&T assigned all of its right, title and interest in loans, including the interest in the Lease and the collateral to WM Capital on November 15, 2013.

On December 3, 2013, PNB filed a Complaint against M&T, SEPCO, and TNT1. On December 24, 2013, WM Capital as successor-in-interest to M&T filed its Answer to the Complaint.

On March 4, 2014, WM Capital filed a Motion for Summary Judgment. PNB then filed a response

in opposition to WM Capital's Motion for Summary Judgment.

PNB alleges that because of the July 2012 Assignment, PNB is entitled to payments of all the rents, income, royalties and profits derived from the Lease. PNB alleges that such Assignment gives priority on the royalties since it was executed and recorded prior to a[n] NDA Agreement between TNT1, M&T and SEPCO dated July 18, 2012.

On the other hand, WM Capital alleges that it has the right to the royalties because of the mortgage and Security Agreement which were executed, delivered, and perfected in 2004 and 2008, years prior to the PNB Assignment. Argument was held on April 28, 2014 to determine who has the right to the royalties.

Trial court opinion, 5/21/14 at 1-3.

The trial court determined that the royalty payments are personal property and therefore M&T's UCC-1 financing statement was sufficient to perfect its interest. The trial court also found that M&T's Security Agreement with TNT1, giving it a security interest in all of TNT1's assets and personal property, including collateral, was executed on August 5, 2008, before PNB's July 31, 2012 Assignment. Therefore, the 2008 Security Agreement takes priority over the 2012 Assignment and WM Capital, as successor-in-interest to M&T, has a priority claim to the royalties. This timely appeal followed.

Appellant complied with Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court filed a Rule 1925(a) opinion.[2]

The following issues have been presented for our review:

1. Did the Trial Court err in ruling that the royalty payments at issue in this matter are personal property such that the 2008 Manufacturers and Traders Trust Company, predecessor in interest to WM Capital Partners XXXIX, LLC (hereinafter, "M&T") Security Agreement and Financing Statement granted M&T a perfected security interest in the royalty payments?

2. Did the Trial Court err in finding that the Security Agreement and Financing Statements filed by M&T were sufficient to perfect M&T's interest in the royalties from the Oil & Gas Leases of record?

3. As M&T did not have a perfected security interest in the rents, royalties and payments from the Oil & Gas Lease as a result of its 2008 filing, did the Trial Court err in ruling that the 2008 M&T Security Agreement takes priority over the 2012 Assignments of the Leases, Rents and Royalties to Peoples Neighborhood

---

[2] The record indicates that summary judgment was granted in favor of WM Capital only. In addition, SEPCO filed preliminary objections to the complaint that were never decided, including a claim that the Pennsylvania Industrial Development Authority is a necessary and interested party. However, this action is in the nature of a declaratory judgment and the only issue is who is entitled to the royalty payments; there is nothing left to be established. SEPCO, the oil and gas well developer, has declined to file a brief in this matter, indicating that its only concern is that the royalties be paid to the proper party. Those funds are currently being paid into escrow. It appears that TNT1 did not file any responsive pleadings, nor has it filed a brief on appeal. According to WM Capital, the property formerly owned by TNT1 was sold at sheriff's sale to WM Capital. (WM Capital's brief at 5.) This case involves the very narrow legal issue of whose security interest takes priority. As such, we decline to remand to the trial court for a determination of finality.

Bank, predecessor in interest to Peoples Security Bank and Trust Company (hereinafter, "PNB")?

4.   Did the Trial Court err in that it failed to address PNB's contention that the language of the Subordination and Non-Disturbance Agreement entered into between M&T, TNT1, LP and Southwestern Energy Production Company in 2012 constituted an Assignment of the Rights to Royalties that was subsequent to the Assignment of those rights to PNB[?]

Appellant's brief at 5-6.

Initially, we note:

Our scope of review of a trial court's order disposing of a motion for summary judgment is plenary. Accordingly, we must consider the order in the context of the entire record. Our standard of review is the same as that of the trial court; thus, we determine whether the record documents a question of material fact concerning an element of the claim or defense at issue. If no such question appears, the court must then determine whether the moving party is entitled to judgment on the basis of substantive law. Conversely, if a question of material fact is apparent, the court must defer the question for consideration of a jury and deny the motion for summary judgment. We will reverse the resulting order only where it is established that the court committed an error of law or clearly abused its discretion.

*Grimminger v. Maitra*, 887 A.2d 276, 279 (Pa.Super.2005) (quotation omitted). "[Moreover,] we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be

> resolved against the moving party." ***Evans v. Sodexho***, 946 A.2d 733, 739 (Pa.Super.2008) (quotation omitted).

***Ford Motor Co. v. Buseman***, 954 A.2d 580, 582-583 (Pa.Super. 2008), ***appeal denied***, 970 A.2d 431 (Pa. 2009).

Appellant argues that the right to royalty payments is an account arising out of the sale of oil and gas at the wellhead within the meaning of the term "as-extracted collateral," to which special rules apply for perfecting security interests. WM Capital contends that royalties are personal property, not real property or "as-extracted collateral," and therefore M&T perfected its security interest when it filed its financing statement with the Secretary of the Commonwealth in August 2008. WM Capital argues that it is well settled as a matter of Pennsylvania law that royalty payments, including under an oil and gas lease, are considered personal property. According to WM Capital, royalties are not payments out of the sale of oil and gas at the wellhead; rather, they represent payments by a lessee to a lessor for the right to obtain a fee interest in the oil and gas and to remove same. (WM Capital's brief at 11.) According to WM Capital, the fact that royalty payments may be generated by the sale of oil and gas by the lessee does not change their character as personal property rather than real property. (***Id.*** at 11-12.)

Pennsylvania's Uniform Commercial Code ("UCC"), defines "account," in relevant part, as:

(1) Except as used in "account for," a right to payment of a monetary obligation, whether or not earned by performance:

    (i) for property which has been or is to be sold, leased, licensed, assigned or otherwise disposed of[.]

13 Pa.C.S.A. § 9102(a).

"As-extracted collateral" is defined as any of the following:

(1) Oil, gas or other minerals which are subject to a security interest which:

    (i) is created by a debtor having an interest in the minerals before extraction; and

    (ii) attaches to the minerals as extracted.

(2) Accounts arising out of the sale at the wellhead or minehead of oil, gas or other minerals in which the debtor had an interest before extraction.

*Id.*

Under this Article, oil, gas, and other minerals that have not been extracted from the ground are treated as real property, to which this Article does not apply. Upon extraction, minerals become personal property (goods) and eligible to be collateral under this Article. ***See*** the definition of "goods," which excludes "oil, gas, and other minerals before extraction." To take account of financing practices reflecting the shift from real to personal property, this Article contains special rules for perfecting security interests in minerals which attach upon extraction and in accounts resulting from the sale of minerals at the wellhead or minehead. ***See***, ***e.g.***, Sections 9-301(4) (law governing perfection and

> priority); 9-501 (place of filing), 9-502 (contents of financing statement), 9-519 (indexing of records). The new term, "as-extracted collateral," refers to the minerals and related accounts to which the special rules apply. The term "at the wellhead" encompasses arrangements based on a sale of the produce at the moment that it issues from the ground and is measured, without technical distinctions as to whether title passes at the "Christmas tree" of a well, the far side of a gathering tank, or at some other point. The term "at . . . the minehead" is comparable.

***Id.***, Comment.

As the trial court states, this court has long held that royalties are considered personal property. (Trial court opinion, 8/12/14 at 4, citing ***Snyder Bros., Inc. v. Peoples Natural Gas Co.***, 676 A.2d 1226, 1230 (Pa.Super. 1996), ***appeal denied***, 686 A.2d 1312 (Pa. 1996) ("A lease of minerals in the ground is a sale of an estate in fee simple until all the available minerals are removed; this leaves the lessor with only an interest in the royalties to be paid under the lease, which are personal property." (emphasis deleted) (citation omitted)); ***see also Miller v. Dierken***, 33 A.2d 804, 807 (Pa.Super. 1943) (royalty interests under oil and gas lease are personalty) (citations omitted).) We agree with appellees that an interest in the royalties is not an account arising out of the sale of oil and gas "at the wellhead." Rather, they are payments for the right to obtain a fee interest in the oil and gas that has been severed from the estate. Therefore, the royalties are personal property, not as-extracted collateral.

In appellant's second issue, it claims that since M&T filed its UCC-1 financing statement with the Department of State, rather than in Susquehanna County, where the real property was located, M&T does not have a perfected security interest in the royalty payments. Section 9501 of the PA-UCC provides, in relevant part:

> **(a)  Filing offices.**--Except as otherwise provided in subsection (b), if the local law of this Commonwealth governs perfection of a security interest or agricultural lien, the office in which to file a financing statement to perfect the security interest or agricultural lien is one of the following:
>
> (1)   The office designated for the filing or recording of a record of a mortgage on the related real property if:
>
> (i)   the collateral is as-extracted collateral

13 Pa.C.S.A. § 9501(a)(1)(i).

As discussed above, the royalties are personal property, not as-extracted collateral. Therefore, M&T was only required to file a financing statement with the office of the Secretary of the Commonwealth. 13 Pa.C.S.A. § 9501(a)(2). As the trial court states, M&T's financing statement provided the name of the debtor (TNT1 Limited Partnership); the name of the secured party (M&T); and indicated the collateral covered by the financing statement ("all assets"). (Trial court opinion, 8/12/14 at 4-5.) *See* 13 Pa.C.S.A. § 9502(a) ("Sufficiency of financing statement"). As such,

the Security Agreement providing M&T with a security interest in all of TNT1's assets and personal property including the royalties was properly perfected by the financing statement filed on August 8, 2008. M&T was not required to file a financing statement with the Susquehanna County Recorder of Deeds as contended by appellant. There is no error here.

Next, appellant argues that its July 13, 2012 Assignment with TNT1, providing appellant with an interest in the royalties, is superior to M&T's August 5, 2008 Security Agreement. Again, however, this argument presupposes that M&T's security interest was not properly perfected. Therefore, the argument fails.

Section 9322 of the PA-UCC provides:

> **§ 9322. Priorities among conflicting security interests in and agricultural liens on same collateral**
>
> **(a) General priority rules.**--Except as otherwise provided in this section, priority among conflicting security interests and agricultural liens in the same collateral is determined according to the following rules:
>
> (1) Conflicting perfected security interests and agricultural liens rank according to priority in time of filing or perfection. Priority dates from the earlier of the time a filing covering the collateral is first made or the security interest or agricultural lien is first perfected, if there is no period thereafter when there is neither filing nor perfection.

> (2) A perfected security interest or agricultural lien has priority over a conflicting unperfected security interest or agricultural lien.
>
> (3) The first security interest or agricultural lien to attach or become effective has priority if conflicting security interests and agricultural liens are unperfected.

13 Pa.C.S.A. § 9322(a). *See also Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F.Supp. 813, 830 (E.D.Pa. 1993) (where two or more creditors have perfected security interests in the same collateral, the party who filed his security interest first will have priority) (citations omitted). As the trial court properly determined, the July 13, 2012 Assignment was executed and recorded <u>after</u> the perfected mortgage and Security Agreement with M&T. (Trial court opinion, 8/12/14 at 5-6.) Therefore, appellant does not have priority to the royalties. Appellant's interest in the royalties is subordinate to M&T's perfected security interest.

Finally, appellant argues that the July 18, 2012 "Non-Disturbance and Attornment Agreement" ("NDA") between SEPCO (Lessee), TNT1 (Lessor), and M&T (Lender) constituted an acknowledgment that M&T did not have a perfected security interest in the payment of royalties from the oil and gas leases. (Appellant's brief at 25.) According to appellant, the NDA included an authorization by TNT1 that lease payments were to be made to M&T on demand; if that right had already been vested in M&T by the Security Agreement, such authorization would have been unnecessary. (*Id.* at

25-26.) Appellant states that the NDA was executed and filed subsequent to July 13, 2012, when the PNB Assignment was filed in Susquehanna County. (***Id.*** at 26.)

The NDA provided, in relevant part, as follows:

> WHEREAS, Lender, at the request of Lessor and Lessee, has agreed to enter into this Agreement with respect to the Property and Lessee's interest in the Property pursuant to the Lease.
>
> NOW, THEREFORE, the parties, intending to be legally bound, hereby agree as follows:
>
> 1. <u>Nondisturbance</u>. Insofar and only insofar as it relates to the Property, Lender acknowledges and agrees that for so long as the Lease remains in effect, Lender will not infringe upon, diminish, interfere, terminate or disturb the Lease and Lessee's leasehold interests therein, including, without limitation, in the event of a foreclosure or other proceedings brought to enforce the Mortgage or if the Property shall be transferred by deed in lieu of foreclosure or otherwise, and Lessee shall continue in the quiet enjoyment of the same, including, subject to the provisions of Section 2 hereof, the right to pay all rents and royalties payable under the Lease to the Lessee.
>
> 2. <u>Payment of Royalties</u>. Lessee agrees, in consideration of the execution of this Agreement by Lender, that in the event the Lender advises Lessee in writing ("<u>Payment Demand</u>"), with a copy to Lessor, that any loan or other obligation of Lessor is delinquent, in default or that Lender has become the owner of the Property, then Lessee shall pay to Lender all royalties, rentals and any other remuneration due or to become due under the Lease until further written notice from Lender.

RR at 63-64.

After careful review, we agree with appellees that it is clear from the language of the NDA that the parties did not intend any assignment of rights, but merely to memorialize an agreement not to disturb the lease and SEPCO's interest therein in the event that a foreclosure or other proceeding to enforce the mortgage occurred. (Appellees' brief at 23.) As the trial court states, the NDA was not an assignment of the royalties and related to the real property, not the personal property. (Trial court opinion, 8/12/14 at 6.) The NDA did not establish any present intention to make an assignment; rather, when the provisions are read together, they recognize M&T's existing right to the royalties and its agreement not to disturb or interfere with TNT1's right to collect the royalties unless TNT1 defaults on the mortgage. Therefore, the NDA has no bearing on the issue of relative lien priorities and the trial court did not err in its determination that WM Capital, as successor-in-interest to M&T, has a priority claim to the royalties.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2015